RUTH DUNLAP HENDERSON, ET AL., PLAINTIFFS-RE-
SPONDENTS, v. GEORGE KEITH HENDERSON, DE-
FENDANT-APPELLANT.

Argued September 22, 1952—Decided October 27, 1952.

Mr. *Stuart A. Young, Jr.* argued the cause for the appellant (*Messrs. McCarter, English & Studer*, attorneys; Mr. *Nicholas Conover English*, of counsel).

Mr. *Nathan A. Whitfield* argued the cause for the plaintiffs-respondents.

The opinion of the court was delivered by

OLIPHANT, J. This case involves the custody of minor children. It is an appeal from an order entered on March 30, 1952, which will be hereafter referred to.

The plaintiff, Mrs. Henderson, and defendant were married in Canada on September 3, 1940 and have two children, one born in 1943 and the other in 1946. The family lived together in Montreal, Canada, except for a short time during the last war, until marital difficulties were encountered and the children, in October 1949, were removed to their maternal grandparents' home in Montclair, New Jersey, by their mother, apparently against their father's will. In December, 1949, Mrs. Henderson left Montreal and moved to her parents' home where she and the children have since resided.

In September 1949 Mrs. Henderson instituted in the Superior Court of the Province of Quebec a separation suit against her husband in which she sought the permanent custody of the children. During the pendency of that suit Mr. Henderson filed a similar suit in the same court likewise seeking the custody of the children. Mrs. Henderson's petition for a separation was dismissed and it was while this defendant's suit was still pending that the children were removed from Montreal to Montclair. Defendant's suit for separation and custody of the children went to final hearing and on September 8, 1950 the Superior Court of the Province of Quebec entered final judgment holding: (1) that the defendant in the instant suit, the plaintiff there, was well qualified to bring up the children; (2) that the children had been removed from their home in Montreal without authorization; (3) that the parties be separated as to bed and board; and (4) that Mr. Henderson be granted the exclusive custody of the children with a provision that they be permitted to reside with their maternal grandfather until July 1, 1953, or until his death, whichever occurred first, during the time their school was in session and while he was at his summer cottage on Cape Cod.

The present action was instituted in the Superior Court on June 11, 1951 by complaint, in which Mrs. Henderson and her parents are joined as party plaintiffs, and order to show cause. The plaintiffs sought the permanent custody of the children; protection of a restraint in the maintenance of their control and custody; sufficient surety to be given by the defendant that the children would not be removed from the jurisdiction; and the payment of counsel fees, suit money and costs in the event he contested the action. The order to show cause to that effect was issued on the *ex parte* application of the plaintiff-wife and served upon the defendant personally in Montreal, Canada.

On June 18, 1951, one week after the order to show cause in the present action was entered, a supplementary petition in the defendant's separation suit in Canada was filed, apparently on behalf of the plaintiff-wife here, seeking a modification of the judgment of that court to the extent that the plaintiff be given permanent custody of the children subject to defendant's rights of visitation. No action was ever taken on this supplementary petition and the plaintiff asserts it was filed without authorization from her. On June 30, 1951, pursuant to an application made to the Federal Parliament of Canada and subsequent to the entry of the judgment of the Superior Court of the Province of Quebec, the defendant was granted a final decree of divorce, and thereafter on July 13, 1951 he re-married and is now living in Montreal with his second wife and her one child.

On the return day of the order to show cause issued in the instant suit the defendant appeared by counsel, made what amounted under the old rules to a special appearance (see *Rule* 3:12–2), and moved to dismiss the complaint and order to show cause on the ground that the Superior Court was without jurisdiction of either the subject matter or the person, and the plaintiff applied to the court for a continuation of the restraints contained in the order to show cause and asked the court to award custody of the children to the plaintiffs until the further order of the court and for an

order requiring the defendant to pay the plaintiffs' counsel fee. At the conclusion of the argument the court reserved decision and directed counsel to submit briefs on the question of jurisdiction. This was done, supplementary affidavits and papers were filed and on January 18, 1952 the advisory master handed down his conclusions. After a hearing as to its terms the order appealed from was entered. It provided: (1) that the defendant's motion to dismiss the plaintiffs' order to show cause and to dismiss the complaint for lack of jurisdiction be denied; (2) that the care and custody of the infant children be awarded to the plaintiff and her parents until the further order of the court, subject to reasonable visitation by the defendant within this State; (3) that the defendant desist and refrain from taking custody of the children from the plaintiff and removing them from the State until the further order of the court; (4) that the defendant have 20 days within which to file an answer to the complaint; (5) that the case proceed to final hearing; and (6) that the application of the plaintiffs for counsel fees and costs be reserved until final hearing.

The appeal was taken to the Appellate Division pursuant to *Rule* 4:2–2(a)(3) which permits appeals to be taken from orders, whether or not interlocutory, determining that the court has jurisdiction over the subject matter or the person. Pending its hearing in the Appellate Division we certified the appeal on our own motion.

Appellant raises first the point that the Superior Court of this State lacked jurisdiction of the subject matter of the cause. It cannot be seriously questioned that the court had jurisdiction, and this the appellant admitted on the argument before us but asserted that it should not have been exercised under the facts and circumstances of this particular case. This argument is based on a two-fold proposition, first, that the final judgment of the Canadian court granted custody of the children to the defendant here and therefore our court should not assume jurisdiction under the doctrine of international comity, and secondly, that the complaint contained

no allegation that the defendant is an unfit person to have custody of the children or that there has been an appreciable change in conditions since the entry of the final judgment of the Canadian court.

As to the jurisdictional question the power of the former Court of Chancery, to which the Superior Court succeeded (*Art. XI, Sec. IV, par.* 3 of the *Constitution of 1948*) as *parens patriae*, is firmly established in our jurisprudence, derived from the common law, our case law and by statute. 1 *Bl. Com.* *451; *Lyons v. Blenkin, Jac. Chan. Reports* 245 (1821); *State v. Baird,* 19 *N. J. Eq.* 481 (*E. & A.* 1868); *Richards v. Collins,* 45 *N. J. Eq.* 283 (*E. & A.* 1889); *Lippincott v. Lippincott,* 97 *N. J. Eq.* 517 (*E. & A.* 1925); cf. *Hachez v. Hachez,* 124 *N. J. Eq.* 442 (*E. & A.* 1938). In dealing with the custody and control of infants the touchstone of our jurisprudence is their welfare and happiness.

Our Divorce Act, *R. S.* 2:50–37, as amended by *L.* 1948, *c.* 320, *sec.* 25, *p.* 1291, applicable when this action was instituted, provided *inter alia* that pending a suit for divorce brought in this State or elsewhere or after judgment the court may make such order touching the care, custody, education and maintenance of the children as the circumstances of the parties and the nature of the case should render fit. This statute was re-enacted in substantially the same form in 1951 and is now *N. J. S.* 2A:34–23.

*R. S.* 9:2–3, as amended by *L.* 1948, *c.* 321, *sec.* 3, and *R. S.* 9:2–4, as amended by *section* 4 of the same law, are pertinent. The latter section provides that "in no case shall the court having jurisdiction in this State over the person and custody of any minor permit such child to be removed from this State where the mother or father resides in this State and is the suitable person who should have the custody of such child for its best welfare." The general equity *parens patriae* jurisdiction implemented by these statutes is predicated upon the minor's residence in this State, *Conwell v. Conwell,* 3 *N. J.* 266 (1949). The children of these par-

ties were resident here at the time of the institution of this action. .

The appellant conceded on the argument. that the court had jurisdiction over him as to the *ad interim* restraint prayed for and granted. The use of an order to show cause for such purpose is usually effective only to the extent that it requires the defendant, if he so desires, to contest the necessity of an *ad interim* restraint by the use of affidavits without the necessity of having to appear generally or answer. But it does not have the effect insofar as the *res* or the issues of the main cause are concerned of compelling him to answer or voluntarily putting himself in court. If a plaintiff could obtain an *ad interim* restraint, either *ex parte* or on order to show cause, without the issuance thereafter of process which could compel the defendant to answer or appear generally, he could perpetually enjoin the defendant without ever litigating the dispute. *Cf. Allman v. United Brotherhood of Carpenters*, 79 *N. J. Eq.* 150 (*Ch.* 1911), affirmed *Ibid., p.* 641 (*E. & A.* 1912).

While special appearances have been superseded, a defendant may still appear for the purpose of testing the necessity of the *ad interim* restraint and not for the purpose of litigating the issues upon the decision of which the final judgment must rest. *Cf. Armour v. Armour,* 142 *N. J. Eq.* 337, 338 (*E. & A.* 1948).

While the new rules have superseded the formal writ of injunction and the necessity for issuing a summons, as such, to compel answer or appearance, the essential requirements of due process antecedent to the entry of a final judgment of injunction still remain. *Rules* 3:65–2 and 3:65–3, read in conjunction with *Rules* 3:79–2 and 3:79–3, require that the order to show cause "shall be so framed as to notify the defendants fully of the terms of the judgment sought," and the order to show cause must "be served within the State at least 10 days before the return day, and in the manner prescribed by *Rule* 3:4 for the service of a summons, unless the court orders shorter or longer service or some other

manner of service. *Service may be made outside of the State, or by mail, publication or otherwise, all as the court may by order direct, provided the nature of the action is such that the court may thereby acquire jurisdiction."* (Italics supplied.)

In short, while a summons is unnecessary and an order to show cause is used instead, all the other prerequisites of due process, whether by personal service in the State or out of the State by publication and substituted service, must be taken where necessary to give the court jurisdiction to enter a final judgment of injunction. *Cf. Pennoyer v. Neff,* 95 *U. S.* 714, 24 *L. Ed.* 565 (1878) ; *Swanson v. Swanson,* 8 *N. J.* 169 (1951).

The order to show cause and service in the State of the order of the trial court granting the restraint and requiring the defendant-appellant to answer in 20 days is not sufficient to give the court jurisdiction to enter a final judgment. Further, it is required under the rules to give a non-resident defendant at least 35 days to answer. *Rules* 3:12–1 and 3:65–2.

In order for the court to acquire jurisdiction to enter a final judgment on the issues of custody raised by the complaint, jurisdiction will also have to be acquired by publication and substituted service of an order to show cause. On January 1, 1952, *Rule* 3:85–3 (*a*) was amended to make clear that all the requirements of *Rule* 3:85 relate only to divorce and nullity actions and that in proceedings in other "matrimonial actions," as defined in *Rule* 3:82 (*b*), process shall issue and be served in compliance with *Rules* 3:4–4, 3:4–5 and 3:4–6.

In the present posture of the cause it is unnecessary to pass upon what effect should be given to the orders and judgment of the Superior Court of the Province of Quebec as a matter of international comity, since on the record before us it is not clear whether there was a hearing on the merits as to which parent, with the welfare of the children the prime consideration, was best fitted to have custody. As to several

of the issues involved a conflict as to the facts and their legal effect has been raised, the disposition of which must await final hearing.

The appeal is dismissed. No costs.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For reversal*—None.