909 A.2d 1168 (2006)
388 N.J. Super. 612
M.A., Plaintiff-Appellant,
v.
E.A., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 5, 2006.
Decided November 17, 2006.
*1169 Paul G. Kostro, Linden, for appellant.
Respondent did not file a brief.
Before Judges A.A. RODRÍGUEZ, COLLESTER and SABATINO.
The opinion of the court was delivered by
SABATINO, J.S.C. (temporarily assigned).
Plaintiff M.A. appeals the Family Part's August 3, 2005 order dismissing her domestic violence complaint against her husband, defendant E.A. Plaintiff sought restraints after her fifteen-year-old daughter by another marriage reported that defendant had sexually abused her two nights earlier, and that he had been doing so for several years. Although we affirm the Family Part's holding that defendant's teenage stepdaughter is not a "victim" within the statutory definition of N.J.S.A. 2C:25-19(d) and that the mother lacks standing to assert claims on her child's behalf under the Prevention of Domestic Violence Act ("Domestic Violence Act"), N.J.S.A. 2C:25-17 to 35, we remand for further proceedings to enable the record to be amplified concerning acts of domestic violence that defendant may have committed against plaintiff individually, acts which were partially described in plaintiff's testimony before the trial court curtailed it.
Plaintiff, who testified at trial through a Polish interpreter, was born in Poland and moved to the United States at the age of twenty-three. In December 1989, plaintiff gave birth to a daughter ("M.P.") with her first husband. After that marriage ended, plaintiff met defendant in July of 1996, and began living with him two months later. The parties had a son in 1997 and were married in 2001. M.P. continued to reside with them and her half-brother.
The record indicates that in December 2001 defendant was arrested by the Linden police based on allegations that he had assaulted plaintiff. As recounted by plaintiff in her testimony in this case, the parties had an argument which caused defendant to start "beating [her] up." M.P. called the police and plaintiff, who had "a terrible headache," was taken to the hospital. Plaintiff recalled that she procured a restraining order against defendant at that time, although no such order was supplied in the record. In any event, the parties thereafter resumed cohabitating.
*1170 Plaintiff also recounted at trial that defendant "would occasionally batter [her] [and] beat [her] up," and that he "would kick [her] [and] push [her]," but not to an extent that would cause her to call the police. She illustrated this by describing an incident when defendant struck her in the face while the two of them were in the car by Home Depot. Although the blow was painful and caused plaintiff to walk home alone, it did not result in any physical injuries.
Plaintiff also described that she had observed defendant under the influence of alcohol "whenever [they] had parties at home," and "sometimes . . . saw him coming back from work [on] Saturdays drunk." She also noted that his driver's license had once been suspended for an alcohol-related offense.
The present matter was brought to the police's attention on July 22, 2005, when the police came to the parties' Linden residence in response to a report that defendant had sexually assaulted M.P. on multiple occasions, most recently two days earlier on July 20 in her mother's bedroom. The allegations included vaginal intercourse and fellatio, which M.P. contended had been occurring with defendant since she was age eight or nine. The police interviewed M.P. at the home and then arranged for the assistance of a sexual assault nurse examiner, a rape crisis worker, and the Division of Youth and Family Services. The police also interviewed plaintiff, who advised them that she had been unaware of the sexual assaults until her daughter had reported them to her earlier that day. The record indicates that plaintiff worked in the evening hours and thus would have been away from the residence when the alleged sexual acts occurred.
Following the police investigation, defendant was arrested and charged with aggravated sexual assault in violation of N.J.S.A. 2C:14-2a(2)(c). On July 26, 2005, defendant posted bail and was released from jail. Although it was not documented to the Family Part judge, the bail conditions were presumed to contain the customary restriction on any contact between defendant and his stepdaughter.
On the same day that defendant posted bail, plaintiff filed, apparently with the aid of an interpreter, a complaint in the Linden Municipal Court seeking a Temporary Restraining Order ("TRO") against defendant under the Domestic Violence Act. The complaint specifically alleged:
Her [plaintiff's] husband has verbally threatened her life by "stating he is going to KILL ME.["] [sic]. [T]he family is in fear of their [l]ives. Her husband did commit an act of sexual assault against his stepdaughter [MP].
The complaint checked off boxes for the offenses of sexual assault, harassment and terroristic threats. In the prior history section, the complaint noted the assault incident from 2001 which had led to defendant's previous arrest.
Plaintiff's TRO application was presented telephonically to a municipal court judge. The judge granted the application. Among other things, the TRO prohibited defendant from having any contact with plaintiff, M.P., or the parties' son.
Both parties were represented by counsel at the ensuing trial in the Family Part on plaintiff's application for a Final Restraining Order ("FRO"). The proceedings were translated to plaintiff through a Polish interpreter.
At the outset of the trial, the Family Part judge and plaintiff's counsel engaged in a colloquy on whether plaintiff had standing to seek protection under the Domestic Violence Act arising out of defendant's alleged sexual assaults on his step-daughter. *1171 That legal issue was again raised several times throughout the proceedings. The judge ruled that, under the terms of the statute, plaintiff could not predicate her domestic violence claims on defendant's conduct against her daughter, and that evidence of such conduct was not relevant. As the judge elaborated:
[Plaintiff] cannot obtain a domestic violence restraining order in New Jersey on behalf of her daughter. It might very well be that there is a pending criminal complaint against Mr. [A.] [in which] he will have to deal with those criminal charges as they pertain to her daughter and, as a result of those criminal charges, if he is convicted, certainly there would be, as a part of his sentence, some precautions taken to protect the daughter, but the state of the law in New Jersey with respect to domestic violence does not provide a vehicle for mothers to seek restraining orders on behalf of their daughters or sons.
Having made that determination, the judge terminated the direct examination of the plaintiff, who had repeatedly made references in her testimony to defendant's alleged sexual acts and her concern for her daughter even after the judge had made clear that the mother lacked standing to do so. The judge concluded that plaintiff had failed to establish that defendant had committed domestic violence against her individually, and thus dismissed the restraints.
After the Family Part subsequently denied plaintiff a stay of its ruling, this appeal ensued.[1]

II.
We first address the applicability of the Domestic Violence Act to defendant's alleged sexual assaults of his stepdaughter occurring when she was at or under the age of fifteen. A threshold question is whether M.P. fits the specific definition of a "victim" eligible to seek a TRO or FRO under the Act. In that regard, N.J.S.A. 2C:25-19d provides as follows:
"Victim of domestic violence" means a person protected under this act and shall include any person who is 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present or former household member. "Victim of domestic violence" also includes any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant. "Victim of domestic violence" also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship.

[N.J.S.A. 2C:25-19d (emphasis added).]
The statute further defines an "emancipated minor" specifically as "a person who is under 18 years of age but who has been married, has entered military service, has a child or is pregnant or has been previously declared by a court or an administrative agency to be emancipated." N.J.S.A. 2C:25-19e.
The Act's present definition of a "victim" resulted from legislative amendments in 1994 that slightly expanded the original definition to encompass a person in a dating relationship, as well as in situations where one party is expecting the child of *1172 the other party. Significantly, those particular expansions of the definition do not require the victim to be eighteen years of age or older.
Applying these statutory requirements to the record facts, we concur with the trial judge that M.P. was not a "victim" permitted to bring an application for a restraining order under the Domestic Violence Act. It is undisputed that M.P. was under the age of eighteen, had never been married, was not in military service, was not a parent, and was not pregnant. As such, she was an unemancipated minor ineligible to bring a complaint under the statute in the absence of a dating relationship with the defendant. We decline, as did the trial judge, plaintiff's invitation to categorize defendant's sexual conduct with his stepdaughter as a "dating relationship," for such a finding would unacceptably torture the English language and also would euphemize the hostile nature of defendant's alleged behavior. See Andrews v. Rutherford, 363 N.J.Super. 252, 260, 832 A.2d 379 (Ch.Div.2003) (defining the contours of a "dating relationship" under the Act).
There is also nothing in the text of the statute that allows plaintiff to file a domestic violence complaint on behalf of her minor child as, in effect, a "guardian ad litem." For reasons that are not altogether apparent to us, the Legislature has circumscribed the definition of a "victim" under the Act beyond common notions of victimization. If it had desired to expand the statute to cover all unemancipated minors, it surely knew how to express that desire. Were we to allow this plaintiff to obtain a restraining order under the Act on her daughter's behalf, we would transgress the presumed will of our elected representatives. See N.J.S.A. 2C:25-19(a) (defining "domestic violence" as the occurrence of one or more enumerated acts "inflicted upon a person protected under this act").[2] Any remedy to cover the situation must be sought from the Legislature.
Nor do the alleged sexual assaults of the defendant committed upon his stepdaughter qualify as actionable "harassment" against the plaintiff. Criminal "harassment" is defined at N.J.S.A. 2C:33-4 as an offense committed by a person "with purpose to harass another" who
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.
[N.J.S.A. 2C:33-4.]
None of these definitions sensibly applies to defendant's alleged sexual assaults upon M.P.
*1173 Subsection a of N.J.S.A. 2C:33-4 does not apply because the defendant's alleged sexual acts are not a form of communication. See N.J.S.A. 2C:33-4a. Subsection b, although it includes acts of physical violence, is inapplicable because the term "another" in its phrase "[s]ubjects another to" logically refers to the plaintiff, and not to a third party. See N.J.S.A. 2C:33-4b. Indeed, the prefatory language of N.J.S.A. 2C:33-4 requires the defendant under all three subsections to have a "purpose to harass another" person. In keeping with the symmetry of the text, that "another" person referred to in the prefatory clause must be the same human being as the "another" person under subsection b who is subjected to violent conduct by the defendant. Ibid. Finally, subsection c fails to cover plaintiff in this case, because even though defendant's alleged sexual assaults on M.P. were surely "alarming," there is nothing in the record to suggest that defendant assaulted M.P. for the purpose of "alarming" M.P.'s mother rather than for his own sexual gratification. See N.J.S.A. 2C:33-4c; see also State v. Hoffman, 149 N.J. 564, 695 A.2d 236 (1997) (explicating statutory elements of harassment in the domestic violence context).
In sum, we are constrained by the boundaries of the present statute to sustain the Family Part's conclusion that defendant's alleged sexual abuse of his minor stepdaughter cannot, as a matter of law, support the issuance of a restraining order under the Domestic Violence Act.

III.
[At the direction of the Court, the published version of this opinion omits Part III, which addresses the sufficiency of plaintiff's proofs of acts of domestic violence allegedly committed against her individually, and which concludes that the case must be remanded for the completion of testimony on those matters. See R. 1:36-3.]

IV.
The judgment below is affirmed in part, vacated in part and remanded. We do not retain jurisdiction.
NOTES
[1] We do not know the outcome of the criminal charges against defendant, nor is that germane to our analysis in this civil matter.
[2] We do note in this regard that "no-contact" provisions in a bail order, although desirable, would not be enforceable by plaintiff or by her daughter. Additionally, civil restraints procured by plaintiff or her daughter outside of the Domestic Violence Act would lack the authority of the power to arrest the defendant for a violation. It also seems incongruous that a minor who is raped and who becomes pregnant may obtain restraints under the Act, but that a raped unemancipated minor who does not conceive a child may not obtain similar relief.