29 A.3d 752 (2010)
422 N.J. Super. 487
J.L., Plaintiff,
v.
G.D., Defendant.
Docket No. FV-15-816-11
Superior Court of New Jersey, Chancery Division, Ocean County, Family Part.
Decided November 4, 2010.
*753 J.L., plaintiff, pro se.
Carlos A. Ferreira, for defendant.
L.R. JONES, J.S.C.
This case presents the following issue of first impression in the state of New Jersey: In a contested domestic violence case where the plaintiff is a minor, what if any special procedures should the court implement to provide plaintiff with adult representation in the courtroom?
The court holds the following:
a) The minor is entitled to appointment of a guardian ad litem, to provide her with an adult voice and assistance at the domestic violence hearing;
b) Plaintiff's guardian ad litem can be, but does not have to be, her parent. A minor plaintiff in a domestic violence case will not be compelled to utilize her own parent as her adult representative in court. Under New Jersey law, the minor plaintiff does not need her parents' consent to seek a restraining order against a former dating partner;
c) In this case, where the plaintiff is a minor and the defendant is an adult represented by private counsel, the court shall appoint a licensed New Jersey attorney to represent the minor's interests at trial.
Plaintiff, J.L., is a seventeen year old high school student. She lives with her mother and also works part-time at an ice cream store. Defendant, G.D., is a twenty year old adult. The parties previously dated for approximately two years before plaintiff terminated the relationship.
Plaintiff comes before the court seeking a domestic violence restraining order *754 against defendant. She alleges that defendant engaged in criminal mischief and intentional destruction of property by punching and breaking the front windshield of her car window while she was operating the vehicle. Plaintiff further asserts that this was not an isolated incident of violence, but that defendant recently struck her in the face and shattered yet another car window, again while plaintiff was inside the vehicle.
Essentially, plaintiff contends that defendant is victimizing her in an ongoing cycle of abuse. Defendant denies plaintiff's allegations and objects to plaintiff's request for a restraining order.
On the scheduled date for the final hearing, defendant appeared in court with a privately retained defense attorney to contest the restraining order. Conversely, plaintiff appeared in court without counsel, representing herself.
Given plaintiff's age and status as a legal minor, this court sua sponte raised the issue of whether the court should implement any special procedures at final hearing in order to provide plaintiff with adult representation in the courtroom. The court adjourned and rescheduled the proceeding in order to further research the issue of whether Jersey's Domestic Violence Act did or did not specifically provide for any special procedures in a contested proceeding when the plaintiff is a minor specifically the appointment of a guardian ad litem or counsel to represent the minor's interests.
The guidelines for conducting a domestic violence hearing in New Jersey primarily arise from two legal sources: (1) the Prevention of Domestic Violence Act itself, enacted by the New Jersey Legislature under N.J.S.A. 2C:25-17 to 35 (hereinafter referenced as the "Act"), and (2) the Domestic Violence Procedures Manual (hereinafter referenced as the "DVPM"). The DVPM is an instructive publication issued jointly by the New Jersey Attorney General's office and the New Jersey Supreme Court. Between the Act and the DVPM, all three branches of New Jersey Government have participated in establishing the existing protocols utilized in domestic violence cases. Rule 5:7(A) addresses domestic violence proceedings as well.
The Domestic Violence Act itself does not expressly authorize appointment of a guardian ad litem or counsel for a minor plaintiff. Nor does the Act otherwise reference the issue of providing adult representation to a minor in a contested courtroom proceeding. One possible reason why the statute does not address the subject is that originally, the Domestic Violence Act covered adults only. Prior to 1994, a plaintiff had to be at least eighteen years of age to file a domestic violence complaint. However, in 1994 the Act was amended to permit a person of any age, even a minor, to seek a protective order from ongoing abuse by an adult dating partner. Specifically, the Legislature expanded the definition of "victim of domestic violence" to include "any person, regardless of age, who has been subjected to domestic violence by a person . . . with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19(d). The sponsors' statement in the New Jersey Assembly set forth the public policy considerations generating the amendment:
The bill would broaden the definition of persons protected by the act to include persons 18 years of age and under who are involved in teen date abuse situations, in order to extend the provisions for the imposition of court sanctions and professional interventions in this population.. . .
[Sponsors' Statement to A.286, (May 18, 1994).]
*755 Following the 1994 amendments to the Act, the New Jersey Supreme Court and the Attorney General's office jointly issued the DVPM to provide specific procedural and substantive guidelines and instructions for trial courts presiding over domestic violence proceedings. The DVPM has been regularly amended and updated, most recently in October 2008.
Section 1.20 of the DVPM expressly recognizes the expanded definition of a "victim of domestic violence" under the Act to include minors in dating relationships with adult partners. Section 2.1.3(A) further provides: "A victim may be below the age of 18, may sign the Complaint . . . and does not need the consent of a parent or guardian to file or withdraw a complaint or to request a modification of an existing order."
Accordingly, the DVPM permits minors to institute legal proceedings against violent dating partners without having to inform or involve their parents. Presumably, the intent of this provision is to protect victims' rights of privacy and to encourage abused teens to seek help even those who otherwise would not come forward if forced to disclose their situation to their parents or anyone else in their personal lives. While minors can choose to tell their parents if they so desire and can invite them to attend the court proceedings and provide moral support, they are not required to do so.
The DVPM, however, does not specifically address the issue of a minor's right to adult representation in a contested case. The manual does not expressly authorize appointment of a guardian ad litem or counsel to represent a minor plaintiff's interests in the courtroom.
In M.A. v. E.A., 388 N.J.Super. 612, 613, 618, 909 A.2d 1168 (App.Div., 2006), the Appellate Division rejected an attempt by the mother of a fifteen year old plaintiff to pursue a domestic violence complaint as her daughter's "guardian ad litem". Specifically, the court noted that there was "nothing in the text of the statute that allows plaintiff to file a domestic violence complaint on behalf of her minor child as, in effect, a guardian ad litem." Ibid.
This court notes that the factual and legal issues in M.A. are distinguishable from those in the present case. In M.A., the court found that the fifteen year old plaintiff had no dating relationship with the defendant (her stepfather). Nor did the minor allege same, and she did not otherwise independently meet the statutory definition of a "victim" under the Act to seek a restraining order. Id., at 618, 909 A.2d 1168. The M.A. court rejected the attempt by the plaintiff's mother to be the plaintiff's "guardian ad litem" for the purpose of using her own prior relationship with the defendant as a basis to qualify the minor for coverage as a "victim" under the Act. Ibid. The court declined to appoint a guardian ad litem for the minor plaintiff who did not have legal standing to seek a domestic violence restraining order in the first place. Ibid.
In the present case, however, the minor plaintiff independently qualifies as a "victim" under the Act because she actually had a dating relationship with her alleged abuser. Unlike the minor in M.A., this minor's standing to seek a restraining order under the Act is clear and unequivocal. The purpose of potentially appointing a guardian ad litem in this case is not to artificially establish standing for a plaintiff where none previously existed, but rather to provide an adult voice in the courtroom for a minor exercising her legal right to seek protection from a former dating partner. The court does not read M.A. so strictly as to prohibit appointment of a guardian ad litem under such circumstances.
*756 The importance of the issue is highlighted by the courtroom scene at the start of this case. At one table is an adult defendant, standing next to an experienced and privately retained defense attorney of his choice. At the other table is a minor plaintiff, standing next to an empty chair. There is no basis for this court to conclude that this minor plaintiff is in any way equipped to conduct this legal proceeding by herself, all alone against a represented adult. She has no legal experience with concepts such as direct and cross examination, introduction of evidence, or legal objections in a domestic violence case. She is a high school student and legally still a child, barely old enough to gain entry by herself into an R-rated movie fictionally depicting domestic violence.
This hearing, however, is not a movie. Domestic violence is as real and serious an issue as exists in family court. The court's verdict following trial can have long-reaching consequences on both partiesplaintiff as well as defendant. Defendant tacitly appreciates and recognizes this reality by appearing in court with defense counsel at his side. Whether the minor plaintiff is mature enough to have a similar appreciation and recognition of the importance of an adult voice and representation in the courtroom is unclear. Moreover, there is no evidence that this teenager has the financial resources to afford a private attorney, even if she has the desire to retain one.
Family court is a court of equity. This court cannot and will not turn a blind eye to the inherent inequity of requiring an unrepresented minor to conduct a domestic violence hearing by herself against a represented adult. Parens patriae is the power of the State of New Jersey, by its judicial branch, to protect the interests of those who are incapable of protecting themselves. In re Baby M, 217 N.J.Super 313, 324, 525 A.2d 1128 (Ch. Div., 1987), rev'd on other grounds, 109 N.J. 396, 537 A.2d 1227 (1988). The common law doctrine of parens patriae imposes upon the state the affirmative duty to protect the interests of minors. See Henderson v. Henderson, 10 N.J. 390, 91 A.2d 747 (1952).
While neither the Domestic Violence Act nor the DVPM expressly address or authorize the appointment of a guardian ad litem or counsel for a minor in a domestic violence case, the court has reviewed the New Jersey Court Rules and has considered in particular the rules of "general application" in civil litigation. The court notes the following four points:
a) In the general context of civil litigation, Rule 4:26-2(a) states that a minor who is a party to civil litigation shall be appointed a guardian ad litem.
b) Rule 4:26-2(b)(4) expressly authorizes the court on its own motion to appoint a guardian ad litem for a minor who is a party to a civil proceeding. While in practice this rule is commonly applied in the context of routine negligence claims (i.e., a claim involving a child who is injured in a motor vehicle accident, slip-and-fall incident, etc.), nothing expressly limits this rule to negligence cases or prohibits its application in a domestic violence proceeding.
c) Under the Court Rules, a domestic violence hearing is a civil family action. See Rule 5:7A.
d) Rule 5:1-1 directs that civil family actions "are governed by the Rules in Part IV" (i.e., rules of general application for civil proceedings). The "Rules in Part IV" include Rule 4:26-2(a) and Rule 4:26-2(b)(4), which authorize the Court to appoint a guardian *757 ad litem for a minor litigant in a civil proceeding.
By applying these four points to the present case, the court concludes that the Rules provide specific authority for the court to appoint a guardian ad litem for the minor in this case. A guardian ad litem can provide an adult voice for a minor and advocate for a minor's best interests in a domestic violence proceeding.
There are similarities and differences between the traditional roles of a guardian ad litem and counsel. A major similarity lies in the common function of providing an underage party with an adult voice in court. A major difference is that a guardian ad litem does not necessarily practice law or provide legal advice. One can be, but does not necessarily have to be, an attorney to serve as a guardian ad litem. As noted in Rule 4:26(2)(b)(1), in negligence actions a parent of a child can automatically serve as a guardian ad litem for a child, even without court appointment or order. That automatic provision, however, is expressly limited to "negligence" actions. A domestic violence proceeding is not a negligence action.
As previously noted, a minor plaintiff has no legal obligation to obtain parental consent before instituting a domestic violence proceeding against a former dating partner. Further, even if a minor elects to involve a parent in the legal proceedings, a parent is not automatically the only available option to serve as a minor's guardian ad litem. Just as one does not have to be a lawyer to serve as a guardian ad litem, one does not have to be a parent either. In some cases, requiring a teenage plaintiff to use a parent as his/her only form of adult assistance might not necessarily level the courtroom playing field between the minor and an adult defendant armed with counsel.
The court notes that the majority of parents in New Jersey are not attorneys, and in some cases may have no greater courtroom skills or experience than their own children. Further, some minor plaintiffs may not even want their own parents serving as their courtroom representatives in a domestic violence proceeding, for various possible reasons such as (a) a strained parent/child relationship, (b) privacy issues, and (c) concerns over a parent's ability (or inability) to engage in effective courtroom advocacy and presentation.
In this case, neither plaintiff's mother or father have appeared with plaintiff in court. Moreover, there is insufficient evidence that either parent could effectively assist plaintiff in conducting a contested domestic violence trial against a represented defendant.
Under the circumstances, the court finds it equitable and appropriate to appoint a licensed attorney to serve as plaintiff's representative voice at this domestic violence hearing. This teenager should not have to engage in this legal battle alone and on her own. In other contexts, the New Jersey Supreme Court has recognized that representation of a minor party by an attorney may be critical in a court proceeding. See Planned Parenthood v. Farmer, 165 N.J. 609, 637, 762 A.2d 620 (2000). American jurisprudence has long recognized that the status of minors under the law is unique in many respects. As noted by the United States Supreme Court in Bellotti v. Baird, 443 U.S. 622, 633-634, 99 S.Ct. 3035, 3044, 61 L.Ed.2d 797, 807 (1979), "children have a very special place in life which law should reflect." The Supreme Court further recognized the particular vulnerabilities of children and their inability in many cases to "make critical decisions in an informed, mature manner" Id. at 634-35, 99 S.Ct. at 3043, 61 L.Ed.2d *758 at 807. The Supreme Court further noted that a state is entitled to adjust its legal system to account for children's vulnerabilities. Ibid.
These potential vulnerabilities are all the more glaring in the context of a contested domestic violence case. In the present matter, the minor plaintiff brings forth serious allegations, which if true constitute dating violence against a teenager. In this country, the widespread problem of teen dating violence is appearing on the radar of societal consciousness. Both our national and state governing bodies are developing public policies aimed at protecting teenagers from abuse by former dating partners. The emerging national public policy of protecting teenagers from dating violence is clearly underscored in recent pronouncements by both the legislative and executive branches of the United States government. In 2005, the policy of protecting teenagers from dating violence was noted by its inclusion in the reauthorization of the Federal Violence against Women Act 42 U.S.C.A § 13701. In 2006, Congress officially declared the first week of February as "National Teen Dating Violence Awareness and Prevention Week." In 2010, the U.S. Senate unanimously expanded this time period and pronounced the entire month of February as National Teen Dating Violence Awareness and Prevention month. S. Res. 373, 111th Congr. (2010). In support of this concept, the President of the United States, Barack Obama, issued a proclamation stating the following:
High school students who report having experienced physical violence in a dating relationship are more likely to use drugs and alcohol, are at greater risk of suicide, and may carry patterns of abuse into future relationships. Our efforts to address domestic violence must include these young victims. During this month, we rededicate ourselves to breaking the cycle of violence. By providing young people with education about healthy relationships, and by changing attitudes that support violence, we recognize that domestic violence can be prevented.
[Proclamation by the President of the United States of America in support of National Domestic Violence Awareness Month (Sept. 30, 2009).]
In New Jersey, the Legislature expressly expanded the Domestic Violence Act to include protection for teenagers in abusive dating relationships. Additionally, the State has in other contexts recognized the importance of the issue. For example, the Legislature enacted the Domestic Violence and Child Abuse Education Fund, N.J.S.A. 18A:35-4.23. The statute encourages Boards of Education to teach the psychology and dynamics of teen dating violence in elementary, middle and high schools.[1]
The United States Center for Disease Control and Prevention (CDC) has indicated that one in eleven adolescents may have been victims of physical dating violence. CDC, Physical Dating Violence Among High School Students, United States, 2003, 55(19) Morbidity and Mortality Weekly Report 532-35 (May 19, 2006). The CDC further states:
In addition to the risk for injury and death, victims of dating violence are more likely to engage in risky sexual behavior, unhealthy dieting behaviors, *759 substance use, and suicidal ideation/attempts. Dating violence victimization can be a precursor for intimate partner violence (IPV) victimization in adulthood, most notably among women.
In view of these statistics, the public goal of protecting minors from dating violence is laudable. However, this goal may at times be difficult to reach if allegedly abused teenagers are expected to represent themselves in court. For some teens, the mere concept of standing up and speaking out in a courtroom may be so intimidating that they will avoid coming forward at alleven in cases where dating violence is substantial and a protective order is wholly warranted. Conversely, other teens who do possess the necessary confidence to come forward may not yet possess enough life experience to effectively represent themselves in the traditionally adult world of litigationespecially in contested cases against adult defendants and experienced defense attorneys.
Given these concerns and the seriousness of the allegations in this case, the court finds it equitable and appropriate to appoint an attorney to represent the minor plaintiff's interests at trial. This conclusion is consistent with the stated intent of the New Jersey Legislature "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18.
The Supreme Court has previously noted the importance of the legal community's participation in assisting minors with legal issues. See Planned Parenthood v. Farmer, supra, 165 N.J. at 637, 762 A.2d 620 (even when lists of attorney volunteers to represent minors are compiled, representation may not always be immediately available). In Ocean County, the public is fortunate to have a proactive and assistive bar association, with members who are willing to offer pro bono legal assistance to minors from time to time as the need requires. The court notes that some family law practitioners have advised that they are available to represent the minor plaintiff in this case without charge. Accordingly, the court appoints Steven Zabarsky, of Toms River, to represent plaintiff's interests in this domestic violence proceeding.
A teenager seeking protection from alleged dating abuse should have access to representation when needed. In the present case, plaintiff now has such representation and the matter will be scheduled for final hearing.
NOTES
[1] Following the rendering of this opinion but prior to publication, New Jersey Governor Chris Christie signed into law the New Jersey Safe Dating Bill on May 5, 2011. The new law requires schools to include dating violence as part of the mandatory health curriculum for seventh to twelfth grade students. L. 2011, C. 64, amending and supplementing N.J.S.A. 18A:37-33 to 37; N.J.S.A. 18A:35-4.23(a).