SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**In the Matter of Civil Commitment of D.Y.** (A-42-12) (071464)

**Argued November 19, 2013 – Reargued May 5, 2014 – Decided July 24, 2014**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a competent individual who is subject to involuntary civil commitment pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 3-:4-27.24 to -27.38, may represent himself or herself at a commitment hearing.

In 1987 and 1994, D.Y. pled guilty to repeated sexual assaults against his nephew and another boy, both of whom were twelve years old when the abuse began. As a result, D.Y. was convicted of offenses in state and federal court. On May 27, 2008, after serving his sentences, the State filed a petition for D.Y.'s involuntary civil commitment. At the initial hearing, although counsel had been appointed to represent him, D.Y. stated that he wanted to represent himself. The court ordered the State to conduct a psychiatric evaluation to assess D.Y.'s competence and scheduled a final commitment hearing for June 8, 2009. D.Y. refused to attend the hearing. The trial court judge proceeded in D.Y's absence, concluded that he had a high likelihood of reoffending, entered an order of commitment, and scheduled a final hearing for June 1, 2010. D.Y. filed a motion for reconsideration, arguing that too much time had lapsed between his temporary and final orders of commitment. The trial court denied the motion.

D.Y. appealed the court's final order of commitment. In addition to challenging the timeliness of his final commitment hearing, D.Y. argued that he had a right to self-representation under the Sixth and Fourteenth Amendments of the United States Constitution. An Appellate Division panel affirmed the trial court's denial of D.Y.'s application, concluding that neither of the federal constitutional principles D.Y. invoked affords a right to self-representation in an SVPA civil commitment proceeding. In the Matter of Civil Commitment of D.Y., 426 N.J. Super. 436 (App. Div. 2012).

This Court granted certification, limited to whether there is a constitutional right to self-representation at a commitment hearing under the SVPA. 426 N.J. 436 (2013). After oral argument, the Court ordered supplemental briefing on: (1) the proper standard by which to analyze the right of self-representation under the Fourteenth Amendment in a proceeding involving the SVPA; and (2) whether D.Y.'s claim presents an issue of substantive due process or a concern under Article 1, Paragraph 1 of the New Jersey Constitution. The Court granted the motion of the American Civil Liberties Union of New Jersey Foundation (ACLU-NJ) and Disability Rights New Jersey, Inc. (DRNJ) to appear as amici curiae.

**HELD**: The plain language of N.J.S.A. 30:4-27.29(c) and -27.31(a) requires that there be one of two alternative forms of representation at SVPA commitment hearings: (1) full representation by counsel, or (2) self-representation by an individual who is competent to conduct his or her case, with standby counsel present throughout the hearing to assist if needed. Standby counsel may advise the committee, assist the court in expediting the proceedings, and assume an active role if his or her client proves unwilling or unable to participate cooperatively in the hearing.

1.      This appeal presents an issue of law. Therefore, the relevant standard of review is de novo. De novo review requires the Court to consider the trial court's rejection of D.Y.'s application to represent himself at his SVPA hearing based on constitutional and statutory principles, with no special deference. (pp. 14-15)

2.      The practice of pro se, or self, representation by civil litigants finds its genesis in the English common law. This tradition followed English settlers to North America. West New Jersey and East New Jersey, which would later comprise the colony, and then the State, of New Jersey, permitted parties in both civil and criminal cases to appear in court unrepresented. As they did in our State's colonial past, litigants frequently represent themselves in New Jersey today. (pp. 15-18)

3.     A litigant's decision to proceed pro se may undermine his or her position in the case.  An unrepresented litigant who cannot or will not cooperate with the court can disrupt the proceedings, or derail them entirely. (p. 20)

4.     The use of standby counsel has developed in the setting of criminal cases in which defendants exercise their Sixth Amendment right to represent themselves.  The involvement of standby counsel need not undermine the litigant's autonomy in directing his or her case and can serve to protect the integrity of the proceeding. (pp. 20-22)

5.     Where a case may be decided on either statutory or constitutional grounds, the Court will inquire first into the statutory question and decline to reach the constitutional question, unless required to do so.  Notwithstanding the constitutional analysis undertaken by the parties, the amici, and the courts that have considered D.Y.'s assertion of a right of self-representation, this case may be decided as a question of statutory interpretation.  In light of New Jersey's historical recognition of a competent litigant's election to represent himself or herself in civil proceedings, the Court considers whether the two provisions of the SVPA that address representation in involuntary commitment hearings, N.J.S.A. 30:4-27.29(c) and -27.31(a), bar a competent individual from appearing pro se at an SVPA civil commitment hearing with the assistance of standby counsel. (pp. 23-24)

6.     To assess whether someone is a sexually violent predator subject to civil commitment, the State must establish that the individual has been convicted of a sexually violent offense, suffers from a mental abnormality or personality disorder, and that as a result of the psychiatric abnormality or disorder, it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend.   (pp. 25-27)

7.     The SVPA identifies five rights afforded to a person subject to civil commitment as a sexually violent predator.  N.J.S.A. 30:4-27.31.  In addition to the right to counsel included therein, a corresponding provision, N.J.S.A. 30:4-27.29(c), states that a person subject to involuntary commitment shall have counsel present at the hearing and shall not be permitted to appear at the hearing without counsel.  The Legislature did not, however, bar an individual facing SVPA commitment from representing himself or herself, or state that an individual may participate in the proceedings only through counsel.  Therefore, in future SVPA hearings, including D.Y.'s hearing on remand, competent SVPA committees may appear on their own behalf, with retained or appointed standby counsel present to assist them if necessary. (pp. 27-30)

8.     In this context, any decision by a committee to waive the right to full representation by counsel should be clearly stated to the trial court, and the court should ensure that the committee's waiver of representation by counsel is knowing, intelligent and voluntary.  In State v. Crisafi, this Court prescribed the inquiry that trial courts should make when criminal defendants invoke their right to self-representation.  128 N.J. 499, 511-12 (1992).  The trial court should conduct a similar inquiry to ensure that the committee is aware of his or her statutory right to be fully represented by counsel, and that he or she understands the importance of representation by an attorney in such a complex case. (p. 31)

9.     The role of standby counsel will be shaped by the issues confronting the court.  A competent individual, who represents himself or herself at an SVPA hearing in compliance with the rules of court, cannot be compelled to accept the advice of his or her standby counsel.  Standby counsel serves as a resource, guiding the committee through each stage of the hearing and minimizing disruption and delay.  A committee appearing pro se should not be permitted to obstruct the proceedings.  Proceeding unrepresented does not authorize the committee to undermine the judge's ability to make the important determination required by the SVPA.  When a competent individual chooses the alternative of self-representation, standby counsel will be available to provide advice and guidance, and will assist the trial court in conducting an SVPA commitment hearing that is thorough and fair. (pp. 31-34)

     The judgment of the Appellate Division is **REVERSED.**  The case is **REMANDED** to the trial court for a new commitment hearing.

     **CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUDGE CUFF (temporarily assigned) did not participate.**

IN THE MATTER OF THE

CIVIL COMMITMENT OF

D.Y. SVP 491-08

Argued November 19, 2013
Reargued May 5, 2014 – Decided July 24, 2014

On certification to the Superior Court,
Appellate Division, whose opinion is
reported at 426 N.J. Super. 436 (2012).

Lewis P. Sengstacke, Assistant Deputy Public
Defender, argued the cause for appellant
D.Y. (Joseph E. Krakora, Public Defender,
attorney).

Robert T. Lougy, Assistant Attorney General,
argued the cause for respondent State of New
Jersey (John J. Hoffman, Acting Attorney
General, attorney; Mr. Lougy, Amy Beth Cohn,
and Susan M. Scott, Deputies Attorney
General, on the briefs).

Lawrence Bluestone argued the cause for
amici curiae American Civil Liberties Union
of New Jersey Foundation and Disability
Rights of New Jersey, Inc. (Lowenstein
Sandler, attorneys; Mr. Bluestone, Catherine
Weiss, and Alexander R. Shalom, on the
brief).

JUSTICE PATTERSON delivered the opinion of the Court.

This appeal raises an issue not previously considered by
the Court: whether a competent individual who is subject to
involuntary civil commitment pursuant to the Sexually Violent

1

Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38, may represent himself or herself at a commitment hearing.

In 2008, the State filed a petition for the involuntary civil commitment of D.Y., who had been convicted of several state and federal charges arising from sexual assaults on minors. At his initial commitment hearing, D.Y. stated that he did not want to be represented by the attorney who had been appointed for him in accordance with N.J.S.A. 30:4-27.31(a), which affords individuals a right to counsel at SVPA hearings. D.Y. did not attend his final hearing, in which his counsel moved on his behalf for an order permitting D.Y. to represent himself. The judge conducting the hearing denied the motion, stating that individuals subject to SVPA commitment must be represented by counsel pursuant to N.J.S.A. 30:4-27.29(c).

D.Y. appealed, asserting a right to self-representation under two provisions of the United States Constitution, the Sixth Amendment and the Due Process clause of the Fourteenth Amendment. U.S. Const. amend. VI; U.S. Const. amend. XIV, § 1. An Appellate Division panel affirmed the trial court's denial of D.Y.'s application, concluding that neither federal constitutional principle invoked by D.Y. affords a right to self-representation in an SVPA civil commitment proceeding.

We reverse. We recognize that competent litigants in New Jersey have long been permitted to represent themselves in civil

2

proceedings, with specific exceptions identified in statutes, court rules, and case law. Accordingly, we consider the Legislature's intent when it enacted N.J.S.A. 30:4-27.29(c), which requires an SVPA committee to "have counsel present" and bars him or her from appearing "at the hearing without counsel," and N.J.S.A. 30:4-27.31(a), which affords individuals the right to be represented by counsel at SVPA commitment hearings. We find no evidence that the Legislature, when it enacted those provisions, intended to preclude an individual facing SVPA commitment from speaking on his or her own behalf, as long as standby counsel is present and available to assist throughout the hearing if needed.

Instead, applying the plain meaning of the statutory text, we hold that the statutory mandate is satisfied if a committee who elects to represent himself or herself retains or is assigned standby counsel. Such standby counsel may advise the individual subject to commitment, assist the court in expediting the proceedings, and assume an active role if his or her client proves unwilling or unable to participate cooperatively in the hearing. We acknowledge the effective assistance that standby counsel have provided to pro se litigants in a range of settings and find that such assistance comports with the Legislature's intent when it addressed the issue of counsel in SVPA hearings in N.J.S.A. 30:4-27.29(c) and -27.31(a). Because we resolve this

3

case by statutory construction, we do not reach the Sixth Amendment and due process issues raised by D.Y. A constitutionally based adjudication is not necessary in light of our construction of the statute.

We recognize that an SVPA committee's decision to represent himself or herself will seldom prove to be a sound strategic choice. With complex issues to address, and his or her liberty at stake, it is the rare SVPA committee who will have the skill and experience of an effective lawyer. We are also aware of the challenges that a pro se litigant may pose to the court, counsel for the State, testifying experts, and the progress of the hearing itself. Our decision is rooted in our State's traditional respect for the right of a civil litigant to choose the path of self-representation, regardless of whether that decision is a wise one. Consistent with the Legislature's intent, a competent individual subject to SVPA commitment may represent himself or herself, provided that the support of retained or appointed standby counsel is available if necessary.

Accordingly, we reverse the determination of the Appellate Division and remand this case for a new commitment hearing.

I.

The proceedings to involuntarily commit D.Y. pursuant to the SVPA were premised upon two predicate state criminal convictions, one in 1987 and one in 1994, as well as convictions

4

in federal court related to the same offenses as those leading to D.Y.'s 1994 conviction in state court.

The victim in D.Y.'s first series of sexual offenses was his twelve-year-old nephew, C.Y. In November 1986, D.Y. was indicted for: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); second-degree sexual assault, N.J.S.A. 2C:14-2(b); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). These charges arose from allegations by C.Y. that D.Y. had engaged in sexual conduct with him on several occasions. D.Y. entered into a plea agreement with the State, pursuant to which he pled guilty to second-degree sexual assault in exchange for the dismissal of the other charges. He was sentenced to a five-year term of incarceration.

D.Y.'s second set of sexual offenses was the subject of a state court indictment in 1994, in which he was charged with: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); second-degree sexual contact, N.J.S.A. 2C:14-2(b); and third-degree impairing the morals of a child, N.J.S.A. 2C:24-4(a). These charges arose from D.Y.'s contact with a twelve-year-old boy, A.B., whom D.Y. befriended while on probation. In 1994, A.B. reported to police that D.Y. had sexually abused him over the span of three years. According to A.B., D.Y. sexually abused him during a rafting trip along the Delaware River, on a vacation in Virginia during which they stayed together in a

5

hotel room, in approximately ten to fifteen incidents at a mall where D.Y. worked, and on thirty to fifty occasions at D.Y.'s home. Some of these incidents involved oral and anal sex, which were videotaped by D.Y., and the display of child pornography to the minor. On June 23, 1994, D.Y. pled guilty to first-degree aggravated sexual assault, in exchange for a dismissal of all charges. For that offense, D.Y. was sentenced on April 19, 1995, to an eighteen-year term of imprisonment, subject to a six-year period of parole ineligibility, at the Adult Diagnostic and Treatment Center at Avenel (ADTC).[1]

In addition, federal authorities filed separate charges arising from some of the incidents involving A.B. D.Y. was charged in the United States District Court for the District of New Jersey with coercing a minor to engage in sexually explicit conduct for the purpose of making visual depictions of such conduct, 18 U.S.C.A. § 2251(a), and interstate transportation of

---

[1] Between his first and second terms of incarceration for sexual offenses, D.Y. pled guilty to theft, N.J.S.A. 2C:20-3. The charge arose from D.Y.'s brief employment as the manager of a shoe store following his release from prison. He was accused of stealing $1500 from the store. D.Y. was sentenced to three years' probation for the theft charge on the same day he was sentenced for the state charges involving sex offenses against A.B. In addition, D.Y. was sentenced to three years' imprisonment, consecutive to his state and federal sentences for the offenses against A.B., for violating his probation term arising from the offenses against C.Y. Theft is not a predicate offense for purposes of the SVPA, N.J.S.A. 30:4-27.26, and accordingly the theft charge is irrelevant to D.Y.'s civil commitment proceedings.

6

a minor with the intent to engage in sexual activity with the minor, 18 U.S.C.A. § 2423.  On October 28, 1994, D.Y. pled guilty to both counts of the federal indictment.  On April 6, 1995, he was sentenced to 137 months' incarceration.[2]

D.Y. completed his term of incarceration on or about June 7, 2008.

## II.

D.Y.'s SVPA proceedings commenced with the State's May 27, 2008 petition for his involuntary civil commitment pursuant to N.J.S.A. 30:4-27.28.  The State's petition was supported by certifications prepared by two expert psychiatrists, Marina Moshkovich, M.D. and Sureshbabu Kurra, M.D., both of whom diagnosed D.Y. with pedophilia and antisocial personality disorder.  On June 4, 2004, the trial court found "that there [was] probable cause to believe that [D.Y.] suffer[ed] from a mental abnormality or personality disorder that [made] him likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment."  The trial court entered an order temporarily committing D.Y. to the Special Treatment Unit (STU), the facility operated by the Department of Corrections and the Department of Human Services that houses individuals who are civilly committed under the SVPA.  N.J.A.C. 10:36A-1.1.  The trial court's order required

---

[2] The federal and State terms were to be served concurrently.

7

D.Y. to remain at the STU pending a hearing that the court scheduled for June 23, 2008.

The hearing proceeded on the scheduled date. D.Y. was represented by appointed counsel, who reported to the court that the State had failed to have its designated expert interview D.Y. within five days of the order of temporary commitment, as required by N.J.S.A. 30:4-27.30(b). Counsel for D.Y. explained that D.Y. had declined a request to be interviewed. D.Y. asked to be heard. He confirmed that he did not want to be interviewed, and commented, "I don't want a hearing, either," urging the trial court to "[j]ust sign the commitment papers." D.Y. represented to the court that he wanted to leave the hearing, and when the court inquired as to whether he would stay to assist his counsel, he responded, "I fired him last week, I don't want him." Advised by the court that he could not fire his lawyer, D.Y. retorted, "[w]hy, this is nothing but a joke anyhow. Just go ahead and commit me." He added, "[t]he statutes in this State have been written and broken constantly by the State. It's nothing but a joke."

Although D.Y. stated that he wanted to leave the hearing, the court required him to remain in the hearing room pending testimony by the State's expert, Dr. Howard Gilman, about D.Y.'s competency. The trial court noted the possibility that D.Y.'s statements constituted an assertion of the right to self-

8

representation.  The State then asked Dr. Gilman about his unsuccessful attempts to interview D.Y.  When the expert testified that at one point D.Y. had told ADTC staff that he would consent to be interviewed, D.Y. claimed that the witness was lying, and again stated that the lawyer appearing on his behalf was "not [his] counsel."  The trial judge replied that the SVPA compelled D.Y. to be represented by counsel.  D.Y. responded that the requirement that he be represented was "illegal according to the United States Constitution," and stated, "[w]e're allowed to represent ourselves, no matter what the State says."

Resuming his testimony, Dr. Gilman told the trial court that in the absence of an interview, he was unable to determine whether D.Y. was competent to discharge his lawyer or waive his right to a final civil commitment hearing.  Accordingly, the trial court ordered the State to conduct a psychiatric evaluation of D.Y. in order to assess his competence.

Subsequently, D.Y. was evaluated by Peter Paul, Ph.D., a psychologist at the Ann Klein Forensic Center.  Dr. Paul opined that D.Y.'s behavior was consistent with a diagnosis of Personality Disorder.  Dr. Paul concluded that D.Y. "[was] of above average intelligence and . . . ha[d] no mental illness that would interfere with his ability to understand or participate in the legal proceedings against him."

D.Y.'s final commitment hearing took place on June 8, 2009. When he was approached by officers intending to escort him to his hearing, D.Y. refused to wear leg restraints and declined to attend the hearing. D.Y.'s attorney advised the trial court that D.Y. had refused to speak to him, "except to tell [him] that he wishe[d] . . . to represent himself," and moved "that [D.Y.] be permitted to do so." The trial court offered to permit D.Y. to participate in his representation in conjunction with counsel.

The trial court then proceeded with the hearing, and the State presented the testimony of its expert, Dr. Gilman. At the conclusion of the hearing, the trial court found "by clear and convincing evidence that" D.Y. had a high likelihood to reoffend and "to engage in acts of sexual violence" in the future. The court entered an order of commitment and scheduled a hearing for June 1, 2010, pursuant to N.J.S.A. 30:4-27.35. D.Y. then filed a motion for reconsideration based on the time that had elapsed between his temporary order of commitment and his final commitment hearing. The trial court denied the motion.

D.Y. appealed the trial court's final order of commitment. In addition to asserting an argument based upon the timeliness of his final commitment hearing, D.Y. asserted a right to self-representation. He based that assertion on two federal constitutional provisions: the Sixth Amendment to the United

States Constitution, as applied by the United States Supreme Court in Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), and the Due Process Clause of the Fourteenth Amendment, under the factors articulated by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

The Appellate Division rejected both of D.Y.'s arguments. In re Civil Commitment of D.Y., 426 N.J. Super. 436, 442-47 (App. Div. 2012). It held that the Sixth Amendment right to self-representation recognized in Faretta, "as a corollary to the Sixth Amendment right to counsel," extended only to criminal cases, and that it does not apply to civil commitment. Id. at 441-43. It also concluded that self-representation is not "a necessary component of a fair civil commitment proceeding" for purposes of procedural due process analysis under Mathews. Id. at 443-47. The Appellate Division concluded that "there is no constitutional right to self-representation . . . because the significant interests implicated therein are adequately safeguarded by extant procedural protections, including, most importantly, the right to counsel." Id. at 446. Accordingly, the Appellate Division affirmed the trial court's determination. Id. at 439, 448.

The Court granted certification, "limited to the issue of whether there is a constitutional right to self-representation

11

at a commitment hearing under the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to -27.38." 213 N.J. 394 (2013). Following oral argument, the Court ordered supplemental briefing on two issues: (1) the proper standard to analyze the right of self-representation under the Fourteenth Amendment in a proceeding involving the SVPA; and (2) whether D.Y.'s claim of a right to self-representation presents an issue of substantive due process or a concern under Article 1, Paragraph 1 of the New Jersey Constitution. The Court granted the motion of the American Civil Liberties Union of New Jersey Foundation (ACLU-NJ) and Disability Rights New Jersey, Inc. (DRNJ) to appear as amici curiae, and heard additional oral argument regarding the questions addressed in the supplemental briefs.

## III.

D.Y. argues that he clearly and unequivocally asserted the right to represent himself in his SPVA hearings. He asserts that although SVPA commitment hearings are civil proceedings, the United States Supreme Court's reasoning in Faretta nonetheless governs this case because both criminal prosecutions and civil commitment proceedings involve a substantial curtailment of liberty, and that he has a Sixth Amendment right to represent himself. D.Y. contends that under the Supreme Court's analysis in Mathews, he has a right to represent himself rooted in the Due Process Clause of the Fourteenth Amendment.

12

He asserts that in this case, a compelling private interest is implicated, the denial of his request would effect a substantial deprivation of his freedom of choice, self-representation would impose no additional burden on the State, standby counsel would be available to assist, and trial courts would retain the right to deny the right of self-representation to incompetent individuals subject to SVPA civil commitment. In his supplemental brief, D.Y. asserts that the requirements of the SVPA unconstitutionally impinge on his right to conduct his own defense and compromise an autonomy interest that cannot be preserved by means of procedural safeguards. Raising an additional issue for the first time before this Court, D.Y. contends that Article 1, Paragraph 1 of the New Jersey Constitution protects an SVPA committee's fundamental right to conduct his own defense, given New Jersey's long tradition of respecting the right of self-representation.

The State contends that N.J.S.A. 30:4-27.29(c) and -27.31(a) reflect the Legislature's intent that an individual subject to involuntary commitment under the SVPA should be represented by counsel. It contends that the United States Supreme Court's decision in Faretta is limited to criminal prosecutions, and that D.Y. has no Sixth Amendment right to represent himself. Relying upon California case law, the State asserts that D.Y. has no Fourteenth Amendment due process right

13

to conduct his own defense, and that the participation of counsel, not self-representation, ensures a fair and accurate proceeding. The State identifies two important governmental interests that weigh against self-representation: (1) the protection of the public from dangerous individuals, and (2) the orderly administration of justice in circumstances in which the committee faces confinement. In its supplemental brief, the State argues that the United States Supreme Court's analytical framework in Mathews governs this case. It also counters D.Y.'s substantive due process argument, contending that self-representation in an SVPA proceeding is not a fundamental right.

Amici curiae ACLU-NJ and DRNJ urge the Court to reject the framework of Mathews in favor of a substantive due process analysis. They contend that self-representation in civil cases is a fundamental right dating back to New Jersey's colonial origins, and that it historically extends to civil commitment hearings. Amici argue that the Court should recognize self-representation in involuntary commitment hearings under the SVPA to be a fundamental right under Article I, Paragraph 1 of the New Jersey Constitution, which protects fundamental rights not otherwise recognized by the federal Constitution.

IV.

This appeal presents an issue of law, and the relevant standard of review is de novo. Balsamides v. Protameen Chems.,

14

Inc., 160 N.J. 352, 372 (1999); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Accordingly, we consider the trial court's rejection of D.Y.'s application to represent himself at his SVPA hearing, based upon constitutional and statutory principles, with no special deference. Manalapan Realty, supra, 140 N.J. at 378.

A.

The practice of pro se[3] representation by civil litigants finds its genesis in the English common law, which long respected a competent civil litigant's prerogative to decide whether he or she would seek the assistance of counsel. "The origins of the right to appear for oneself in civil proceedings derive from a number of sources, all deeply rooted in our history and culture." Iannaccone v. Law, 142 F.3d 553, 557 (2d Cir. 1998). One of those sources is the English common law. "Under the English common law with its complicated forms of action and veritable maze of writs and confusing procedures, the right to retain counsel in civil proceedings became a necessity." Ibid. However, by the mid-thirteenth century, "lawyers so monopolized the courts in London that the King was forced to decree that, except for a few special causes,

---

[3] Pro se, a Latin phrase meaning "[f]or oneself," denotes a litigant who represents himself or herself "in a court proceeding without the assistance of a lawyer." Black's Law Dictionary 1341 (9th ed. 2009).

15

litigants were entitled to plead their own cases without lawyers." Ibid. (citing Note, The Right to Counsel in Civil Litigation, 66 Colum. L. Rev. 1322, 1325 (1966)). Thus, in the English legal tradition from which our law was largely derived, litigants generally had the right to represent themselves in court.

The tradition of self-representation followed English settlers to North America. As the United States Supreme Court noted in Faretta, supra, "[t]he colonists brought with them an appreciation of the virtues of self-reliance and a traditional distrust of lawyers." 422 U.S. at 826, 95 S. Ct. at 2537, 45 L. Ed. 2d at 577. As a result, several American colonies went so far as to prohibit "pleading for hire." Id. at 827, 95 S. Ct. at 2537, 45 L. Ed. 2d at 577. For example, the Massachusetts Body of Liberties of 1641 stated that "[e]very man that findeth himselfe unfit to plead his owne cause in any Court shall have Libertie to imploy any man against whom the Court doth not except, to helpe him, Provided he give him noe fee or reward or his paines." Mass. Body of Liberties, Art. 26 (1641), available at https://history.hanover.edu/texts/masslib.html.

Several early colonial documents guaranteed the right to self-representation by giving "colonists a right to choose between pleading through a lawyer and representing oneself." Faretta, supra, 422 U.S. at 828, 95 S. Ct. at 2537-38, 45 L. Ed.

16

2d at 578.  West New Jersey and East New Jersey, later to

comprise the colony and then the State of New Jersey, permitted

parties in both civil and criminal cases to appear in court

unrepresented.  The Concessions and Agreements of the

Proprietors, Freeholders and Inhabitants of the Province of West

New-Jersey, in America stated "[t]hat [in] the trials of all

causes, civil and criminal, . . . no person or persons shall be

compelled to fee any attorney . . . but that all persons shall

have free liberty to plead his own cause if he please."  The

Concessions and Agreements of the Proprietors, Freeholders and

Inhabitants of the Province of West New-Jersey, in America, ch.

XXII (1677), available at http://westjersey.org/ca77.htm#chap22.

Similarly, the Fundamental Constitutions for the Province of

East New Jersey in America stated that "in all courts persons of

all perswasions may freely appear in their own way, and

according to their own manner, and there personally plead their

own causes themselves."  The Fundamental Constitutions for the

Province of East New Jersey in America, ch. XIX (1683),

available at http://avalon.law.yale.edu/17th_century/nj10.asp.[4]

---

[4] There were similar documents in other colonies.  The 1682 Frame
of Government of Pennsylvania, for example, stated that "in all
courts all persons of all persuasions may freely appear in their
own way, and according to their own manners and there personally
plead their own cause themselves; or, if unable, by their
friends."  Frame of Gov't of Penn., Laws Agreed Upon in England,
ch. VI (1682), available at
http://avalon.law.yale.edu/17th_century/pa04.asp.  In Faretta,

17

In the view of Thomas Paine, "to plead one's cause was 'a natural right,' pleading through counsel was merely an 'appendage' to the natural right of self-representation." Iannacone, supra, 142 F.3d at 558 (quoting Faretta, supra, 422 U.S. at 830 n.39, 95 S. Ct. at 2538 n.39, 45 L. Ed. 2d at 578-79 n.39).

As they did in our State's colonial past, litigants frequently represent themselves in New Jersey today. Trial courts handling civil, probate, and family disputes routinely encounter litigants who appear without counsel. Appellants and respondents in civil and family matters often conduct their appeals pro se in this Court and the Appellate Division. See, e.g., Price v. Himeji, LLC, 214 N.J. 263, 268 (2013) (noting plaintiff's self-representation in zoning dispute); Leodori v. CIGNA Corp., 175 N.J. 293, 295 (2003) (stating that plaintiff represented himself in action brought under New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8); Lepore v. Nat'l Tool & Mfg. Co., 115 N.J. 226, 226-27 (1989) (noting that plaintiff appeared pro se in appeal from trial court's dismissal of common law retaliatory discharge claim);

---

supra, the Supreme Court "found no instance where a colonial court required a defendant in a criminal case to accept as his representative an unwanted lawyer" and noted that "even where counsel was permitted, the general practice continued to be self-representation." 422 U.S. at 828, 95 S. Ct. at 2537, 45 L. Ed. 2d at 577.

Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 357 (1988)

(identifying plaintiff as pro se in appeal of banking dispute);

S.B. v. G.M.B., 434 N.J. Super. 463, 468-69 (App. Div. 2014)

(noting that defendant represented herself in custody dispute

with former spouse); Sommers v. McKinney, 287 N.J. Super. 1, 4-5

(App. Div. 1996) (stating that plaintiff litigated fraud and

legal malpractice against her former attorney pro se).  In

short, New Jersey's courts have vast experience in the oversight

of matters in which litigants represent themselves.[5]

B.

---

[5] Certain categories of litigants in civil, probate, and family
court matters, such as minors or persons determined to be
mentally incapacitated, are afforded special protections which
may include appointment of counsel and/or a fiduciary. See,
e.g., N.J.S.A. 3B:13A-3 (providing that in conservatorship
proceedings "court shall have the right to appoint counsel for
[a] proposed conservatee if it believes that counsel is
necessary to adequately protect the interests of the
conservatee"); R. 5:8A (stating that in cases "where custody or
parenting time/visitation is an issue," Family Part, on its own
motion or motion of party or child at issue, may "appoint
counsel on behalf of the child or children" if "the trial court
concludes that a child's best interest is not being sufficiently
protected by the attorneys for the parties"); J.L. v. G.D., 422
N.J. Super. 487, 489 (Ch. Div. 2010) (stating that "where the
plaintiff is a minor and the defendant is an adult represented
by private counsel, the court shall appoint a licensed New
Jersey attorney to represent the minor's interests at trial");
State v. Ehrenberg, 284 N.J. Super. 309, 315 (Law. Div. 1994)
(stating that "[w]hen a bona fide doubt is raised as to the
competence of a mentally ill defendant to proceed pro
se, counsel should be appointed to aid in the competency
determination, as well as to assist the defendant in trying the
case").

Notwithstanding the prevalence of self-representation, a litigant's decision to proceed pro se may undermine his or her position in the case, and substantially impede the progress of the proceedings. Unprotected by skilled and vigilant counsel, a self-represented litigant may fail to discern a pivotal question of law, neglect to inquire about an important issue of fact or omit a crucial objection. No matter how earnest and cooperative a pro se litigant may be, his or her self-representation is likely to protract the hearing and complicate the task of the trial judge. An unrepresented litigant who cannot or will not cooperate with the court can disrupt the proceedings, or derail them entirely.

The use of standby counsel -- an effective solution to these challenges -- has developed in the setting of criminal cases in which defendants exercise their Sixth Amendment right to represent themselves. "The [United States Supreme] Court made explicit that trial judges may appoint standby counsel -- even over a defendant's objection -- 'to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals.'" State v. Davenport, 177 N.J. 288, 301 (2003) (quoting McKaskel v. Wiggins, 465 U.S. 168, 184, 104 S. Ct. 944, 954, 79 L. Ed. 2d 122, 137 (1984)).

20

The participation of standby counsel is intended to safeguard the fairness of the proceeding and further the progress of the case. "Standby counsel is appointed for two main purposes: to act as a 'safety net' to insure that the litigant receives a fair hearing and to allow the trial to proceed without the undue delays likely to arise when a layperson represents his own case." State v. Ortisi, 308 N.J. Super. 573, 591 (App. Div.) (quoting United States v. Bertoli, 994 F.2d 1002, 1018-19 (3d Cir. 1993)), certif. denied, 156 N.J. 383 (1998).

When the self-represented party actively participates in the case and cooperates with the court, the involvement of standby counsel need not undermine the litigant's autonomy in directing his or her case. "A 'pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.'" State v. DuBois, 189 N.J. 454, 466 (2007) (quoting McKaskel, supra, 465 U.S. at 174, 104 S. Ct. at 949, 79 L. Ed. 2d at 131).

> On the other side of the scale, a pro se defendant has no absolute right to bar "standby counsel's unsolicited participation." Further, . . . standby counsel may "steer a defendant through the basic procedures of trial . . . even in the unlikely event that it

21

> somewhat undermines the pro se defendant's appearance of control over his own defense."
>
> [Ibid. (quoting McKaskel, supra, 465 U.S. at 176, 184, 104 S. Ct. at 950, 954, 79 L. Ed. 2d at 132, 137).]

Standby counsel also serves to protect the integrity of the proceeding when a litigant is uncooperative with the court and opposing counsel, or refuses to proceed at all. As the United States Supreme Court noted in Faretta, supra, "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46, 45 L. Ed. 2d at 581 n.46; see also State v. Wiggins, 158 N.J. Super. 27, 32-33 (App. Div. 1978) ("The right of the trial judge to control the proceeding and insure a trial of a defendant which comports with due process concepts is not at odds with the right of self-representation recognized in Faretta . . . ."). When standby counsel is appointed or retained to assist a party, a trial court is in a position to conduct a fair and effective hearing, even if the litigant refuses to cooperate or declines to attend.

This case thus arises in a judicial system accustomed to self-representation by competent individuals in civil cases, and experienced in the use of standby counsel to protect pro se defendants in criminal proceedings.

V.

22

With that context, we consider the issue at the heart of this case: whether D.Y. may represent himself in his SVPA commitment hearing, with standby counsel present and available to offer assistance.

In the trial court, the Appellate Division, and this Court, the question of D.Y.'s right to self-representation was analyzed as an issue of constitutional law. As a general principle, "we strive to avoid reaching constitutional questions unless required to do so." Comm. to Recall Menendez v. Wells, 204 N.J. 79, 95 (2010); see also Randolph Town Ctr., L.P. v. Cnty. of Morris, 186 N.J. 78, 80 (2006) (noting that "[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation"). As the United States Supreme Court held in Harris v. McRae, "if a case may be decided on either statutory or constitutional grounds, [the] Court, for sound jurisprudential reasons, will inquire first into the statutory question." 448 U.S. 297, 306-07, 100 S. Ct. 2671, 2683, 65 L. Ed. 2d 784, 798 (1980).

Notwithstanding the constitutional analysis undertaken by the parties, the amici, and the courts that have considered D.Y.'s assertion of a right of self-representation, this case may be decided as a question of statutory interpretation. In light of New Jersey's historical recognition of a competent litigant's election to represent himself or herself in civil

23

proceedings, we consider whether the two provisions of the SVPA that address representation in involuntary commitment hearings, N.J.S.A. 30:4-27.29(c) and -27.31(a), bar a competent individual from appearing pro se at an SVPA civil commitment hearing with the assistance of standby counsel.

We construe these SVPA provisions in accordance with established principles of statutory interpretation. The Legislature requires that in the construction of its statutes, "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. Our task is to ascertain the Legislature's intent, as reflected in its chosen language, giving the words of the statute their generally accepted meaning. State v. Marquez, 202 N.J. 485, 499 (2010). We "effectuat[e] the legislative plan as it may be gathered from the enactment read in full light of its history, purpose and context." Koch v. Dir., Div. of Taxation, 157 N.J. 1, 7 (1999) (internal quotation marks omitted).

We consider the SVPA's provisions regarding the representation of individuals facing involuntary commitment in light of the purpose and procedural framework of the statute. In enacting the SVPA in 1998, the Legislature found that the

24

existing involuntary commitment procedure, predicated on a finding that the individual at issue is "mentally ill and dangerous to self, others or property," was inadequate as applied to sexually violent predators. N.J.S.A. 30:4-27.25(b). The Legislature deemed it "necessary to modify the involuntary civil commitment process in recognition of the need for commitment of those sexually violent predators who pose a danger to others should they be returned to society." N.J.S.A. 30:4-27.25(c). The SVPA imposes upon the State the burden to prove three elements by clear and convincing evidence:

> (1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend."
>
> [In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014) (internal citations omitted) (quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)).]

Involuntary commitment under the SVPA thus turns upon the determination of "a mental abnormality or personality disorder" that meets the statutory criteria. N.J.S.A. 30:4-27.26. The SVPA incorporates a procedural framework for that determination. Under N.J.S.A. 30:4-27.28(c), the Attorney General is authorized to "initiate a court proceeding for involuntary commitment . . .

25

of an inmate who is scheduled for release upon expiration of a maximum term of incarceration by submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist." N.J.S.A. 30:4-27.28(c).[6] After it receives the Attorney General's submission, the trial court immediately reviews it "to determine whether there is probable cause to believe that the person is a sexually violent predator." N.J.S.A. 30:4-27.28(f). If the trial court finds "probable cause to believe that the person is a sexually violent predator in need of involuntary commitment," it issues an order of temporary commitment and sets a date for a final hearing. N.J.S.A. 30:4-27.28(g).

The individual being considered for civil commitment must be served with notice at least ten days prior to the hearing. N.J.S.A. 30:4-27.30(a). The SVPA mandates that "[a] psychiatrist on the person's treatment team who has conducted a personal examination of the person as close to the court hearing date as possible, but in no event more than five calendar days prior to the court hearing," be present at the hearing to testify "to the clinical basis for the need for involuntary commitment as a sexually violent predator." N.J.S.A. 30:4-

---

[6] N.J.S.A. 30:4-27.28(a), (b) and (d) prescribe the procedure for the Attorney General to initiate proceedings for the civil commitment of individuals other than the inmates whose SVPA commitment is addressed in N.J.S.A. 30:4-27.28(c).

26

27.30(b).  The trial court may also permit testimony from the "next-of-kin" of the person being considered for involuntary commitment, N.J.S.A. 30:4-27.30(c), and "[o]ther members of the person's treatment team and any other witness with relevant information offered by the" individual subject to SVPA commitment, or by the Attorney General, N.J.S.A. 30:4-27.30(b).

The SVPA identifies five rights afforded to a person subject to civil commitment as a sexually violent predator:

> a.   The right to be represented by counsel or, if indigent, by appointed counsel;
> b.   The right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present;
> c.   The right to present evidence;
> d.   The right to cross-examine witnesses; and
> e.   The right to a hearing in camera.
>
> [N.J.S.A. 30:4-27.31.]

The presentation of evidence in an SVPA hearing and the cross-examination of the State's witnesses are seldom simple tasks.  Given the statutory definition of a "sexually violent predator," expert witnesses in the fields of psychiatry and psychology routinely play leading roles in SVPA commitment hearings.  See, e.g., R.F., supra, 217 N.J. at 161-67 (noting that at SVPA hearing, State presented testimony of two experts, one psychiatrist and one psychologist, and committee presented

27

one expert psychiatrist); In re Civil Commitment of J.M.B., 197 N.J. 563, 587 (2009) (noting that testimony of three expert witnesses was presented at commitment hearing); W.Z., supra, 173 N.J. at 114 (identifying two experts (psychiatrist and psychologist) who testified for State, and clinical psychologist who testified on behalf of committee); In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 626 (App. Div. 2009) (stating that two expert witnesses testified on behalf of State), aff'd, 204 N.J. 179 (2010); In re Civil Commitment of R.Z.B., 392 N.J. Super. 22, 31-32 (App. Div.) (noting State's presentation of expert testimony given by psychologist and psychiatrist, and committee's presentation of three expert witnesses, including psychologist, therapist, and psychiatrist), certif. denied, 192 N.J. 296 (2007); In re Civil Commitment of E.S.T., 371 N.J. Super. 562, 567-68 (App. Div. 2004) (stating that trial court considered testimony of psychologist employed at STU and psychiatrist), certif. denied, 192 N.J. 295 (2007). Accordingly, in a typical SVPA commitment hearing, counsel for the individual subject to SVPA commitment must cross-examine the experts whose testimony is offered by the State, and may also present expert testimony on the committee's behalf.

The Legislature acted to ensure that an individual who is facing an SVPA hearing does not confront the State's evidence without the assistance of counsel. In addition to the right to

28

counsel included among the committee's rights in N.J.S.A. 30:4-27.31, a corresponding provision, N.J.S.A. 30:4-27.29(c), states that "[a] person subject to involuntary commitment shall have counsel present at the hearing and shall not be permitted to appear at the hearing without counsel."  The language chosen by the Legislature -- "shall have counsel present," and "shall not be permitted to appear" without such counsel -- can be found in only one other statute, N.J.S.A. 30:4-27.12(d), which governs the involuntary commitment of individuals outside of the SVPA.[7]

Significantly, the Legislature did not bar an individual facing SVPA commitment from representing himself or herself, or state that an individual may participate in the proceedings only through counsel.  The Legislature's clear mandate -- expressed in its affirmative requirement to have "counsel present," and its corresponding bar upon a committee's appearance "without counsel" -- is that an attorney for the individual be in attendance and available to assist his or her client during the entire hearing.  Given this reasonable reading of the

---

[7] This case does not raise, and we do not reach, the issue of whether an adult who is subject to civil commitment pursuant to N.J.S.A. 30:4-27.1 to -27.23, and who is determined to be competent to represent himself or herself, may appear pro se in a commitment hearing.  See N.J.S.A. 30:4-27.12(d); R. 4:74-7(e) (requiring that in civil commitment hearing, "[i]n no case shall the patient appear pro se.  The patient, through counsel, shall have the right to present evidence and to cross-examine witnesses.").  Our holding is limited to competent individuals subject to involuntary commitment under the SVPA, N.J.S.A. 30:4-27.24 to -27.38.

Legislature's language, there is no need for us to reach D.Y.'s argument that the SVPA deprives him of his rights under the Sixth Amendment and principles of substantive due process by preventing him from appearing pro se. Our interpretation renders a constitutional adjudication avoidable because it is unnecessary.

Accordingly, we hold that the plain language of N.J.S.A. 30:4-27.29(c) and -27.31(a) requires that there be one of two alternative forms of representation at SVPA commitment hearings: (1) full representation of the committee by counsel, or (2) self-representation by an individual who is competent to conduct his or her case, with standby counsel present throughout the hearing and available to assist the committee if needed. The text of both provisions is consistent with the committee's conduct of his or her own defense while advised by standby counsel. In future SVPA hearings, including D.Y.'s hearing on remand, competent SVPA committees may appear on their own behalf, with retained or appointed standby counsel present to assist them if necessary.

Given the compelling interests implicated by an SVPA commitment hearing in which the committee appears pro se -- the individual's liberty, the public safety, and the integrity of the judicial process -- we are confident that our experienced

30

trial judges will conduct these proceedings with caution and care. We offer the following general guidelines.

First, any decision by a committee to waive the right to full representation by counsel that N.J.S.A. 30:4-27.31(a) affords to him or her should be clearly and unequivocally stated to the trial court, and the court should ensure that the committee's waiver of his or her right to full representation by counsel in his or her SVPA hearing is knowing, intelligent and voluntary. In State v. Crisafi, this Court prescribed the inquiry that trial courts should make when criminal defendants invoke their right to self-representation. 128 N.J. 499, 511-12 (1992). Before proceeding with an SVPA hearing, the trial court should conduct a similar inquiry to ensure that the committee is aware of his or her statutory right to be fully represented by counsel, and that he or she understands the importance of representation by an attorney in such a complex case.

Second, the role that standby counsel will play in a given SVPA hearing will be shaped by the specific issues confronting the court. Under the SVPA, the trial court must determine whether the individual "suffers from a mental abnormality or personality disorder," and whether, as a result of his or her condition, the individual is highly likely to reoffend unless he or she is confined. N.J.S.A. 30:4-27.26; accord R.F., supra, 217 N.J. at 173; W.Z., supra, 173 N.J. at 130. In a typical

31

hearing, the State will present the testimony of one or more experts in psychiatry or psychology, and the committee's case is likely to be significantly buttressed if expert testimony is presented on his or her behalf. It is the rare SVPA committee who is capable of planning an effective cross-examination of an expert testifying for the State, or who will know how to retain and prepare an expert to counter the State's evidence. The skill and experience of standby counsel in planning and conducting the hearing is critical to the fairness of the proceeding. A competent individual, who represents himself or herself at an SVPA hearing in compliance with the rules of court, cannot be compelled to accept the advice of his or her standby counsel. However, standby counsel serves as a resource, explaining the court's rulings and instructions to his or her client, guiding the committee through each stage of the hearing, and minimizing disruption and delay.

Finally, an SVPA committee appearing pro se should not be permitted to obstruct the proceedings. An individual's choice to proceed unrepresented does not authorize him or her to wrest control of the hearing from the trial court, or to undermine the judge's ability to make the important determination required by the SVPA. As the United States Supreme Court held in Faretta, supra, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not

32

to comply with relevant rules of procedural and substantive law." 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46, 45 L. Ed. 2d at 581 n.46; see also Wiggins, supra, 158 N.J. Super. at 33 (noting that "the right of self-representation, or the right to be absent from the proceedings, is not a license to disrupt the criminal calendar, or a trial in progress"). If a committee flouts the court's instructions, demonstrates disrespect for the judge, counsel, court staff or a witness, or refuses to participate in the hearing, the trial judge should take appropriate action. See State v. Tedesco, 214 N.J. 177, 198 (2013) (noting our trial judges' ability to control their courtrooms and "maintain proper decorum"); Wiggins, supra, 158 N.J. Super. at 32 (stating that "trial judge . . . has an absolute right to implement participation of effective counsel for the criminal defendant who foolishly walks out of the courtroom, desiring neither to participate nor to defend himself"). In appropriate cases, the trial court may direct standby counsel to assume full representation of the committee, and resume the proceedings accordingly.

We recognize that our decision will impose an added burden on civil commitment judges, who are already charged with the challenging task of applying the SVPA. We anticipate that most individuals confronting the prospect of civil commitment will appreciate the strategic disadvantage of appearing pro se, and

will accept the full representation of counsel that the statute affords.  When a competent individual chooses the alternative of self-representation, standby counsel will be available to provide advice and guidance, and will assist the trial court in conducting an SVPA commitment hearing that is thorough and fair.

VI.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for a new hearing consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUDGE CUFF (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO.   __A-42___                           SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____



IN THE MATTER OF THE

CIVIL COMMITMENT OF

D.Y. SVP 491-08



DECIDED          July 24, 2014
_____
                 Chief Justice Rabner                    PRESIDING
_____
OPINION BY         Justice Patterson
CONCURRING/DISSENTING OPINIONS BY  _____
DISSENTING OPINION BY       _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | ---------------------- | --------------------- |
| TOTALS | 6 | |

1