**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1056-17T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF P.W., SVP-435-06.

_____

Argued March 22, 2018 — Decided July 11, 2018

Before Judges Rothstadt and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-
435-06.

Patrick Madden, Assistant Deputy Public
Defender, argued the cause for appellant
P.W. (Joseph E. Krakora, Public Defender,
attorney).

Marie L. Souied, Deputy Attorney General,
argued the cause for respondent State of New
Jersey (Gurbir S. Grewal, Attorney General,
attorney).

PER CURIAM

P.W. appeals from the Law Division's October 11, 2017

judgment, ordering his continued commitment to the Special

Treatment Unit (STU), the secure facility designated for the

custody, care and treatment of sexually violent predators

pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. For the reasons that follow, we affirm.

P.W. is a forty-nine-year-old man with a significant history of committing sexual offenses against children dating back to 1987. In September 1997, P.W. was charged with sexual assault, child abuse, and endangering the welfare of a child for touching and fondling a nine-year-old boy's genitals. He pled guilty to endangering the welfare of a child and was sentenced to five years at the Adult Diagnostic Treatment Center (ADTC).

Just days before the September incident, on or about August 29, 1997, P.W. walked into a basement where children were playing and fondled another young boy's genitals, and warned him that if he told anyone, he would "kick [his] ass." Because of this threat, the child did not disclose the incident to his mother until September 15, 1997. Reportedly, the child's sister was also present and witnessed P.W. touch her brother. In addition, she reported that P.W. attempted to touch her in her private area as well. P.W. pled guilty to endangering the welfare of a child and was sentenced to the ADTC for five years to run concurrent to the sentence he received from the September incident.

In 2002, while on parole, P.W. informed a parole officer that he had just touched a seven-year-old boy on his genitals

while in a grocery store. P.W. was arrested and charged with sexual assault, endangering the welfare of a child and child abuse. In January 2003, he pled guilty to sexual assault and was sentenced to five years in the ADTC.

The State petitioned for P.W.'s involuntary commitment under the SVPA in 2006, and on February 7, 2007, the Law Division entered a judgment committing P.W. to the STU. A first review hearing was conducted on April 4, 2008, and P.W.'s commitment was continued. In 2009, STU entered into a court ordered discharge plan for an appropriate placement for P.W., but he expressed "concerns of reoffending [if he was] placed back into the community" and the plan was abandoned. Subsequent hearings have been held each year prior, resulting in P.W.'s continued commitment.

The most recent review, which is the subject of this appeal, was conducted by Judge Honora O'Brien Kilgallen on October 11, 2017. At the hearing, P.W. did not challenge the fact he committed the requisite sexually violent criminal offense or suffered from pedophilia, which predisposes him to

commit acts of sexual violence.[1]  The focus of the trial was the third required finding that P.W. is highly likely to reoffend.

At the hearing, the State relied on the unrefuted expert testimony of psychiatrist Roger Harris, M.D., who opined that P.W.'s risk to sexually reoffend remained high.  After interviewing P.W. and reviewing previous psychiatric evaluations, STU treatment records, and related documents, Harris prepared a report, which was admitted into evidence without objection.  Similarly, the Treatment Progress Review Committee's (TPRC) report prepared by Jamie R. Canataro, Psy.D.

---

[1]  The Supreme Court has explained the proofs required at the initial hearing and subsequent reviews as follows:

> At the commitment hearing, the State must establish three elements: (1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend[.]"  Although the first two elements derive directly from the statute, to comport with substantive due process concerns, this Court interpreted the third statutory element as requiring the State to show that a person is "highly likely," not just "likely," to sexually reoffend.
>
> [In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014) (citations omitted).]

was also admitted into evidence by consent. The doctor prepared the report after she participated in the TPRC's review and interview of P.W. Additionally, P.W. testified by making a formal statement at the hearing.

Harris concluded that P.W. is "highly likely to sexually reoffend if placed in a less restrictive setting than" STU. Harris testified to P.W.'s prior sexual offenses, stating that his evaluation shows "that his arousal is more to boys" than girls, and that he acts on his arousals despite his prior incarcerations. According to Harris, P.W. reported that he had not masturbated to images of young girls in the three months prior to the evaluation, but did admit to "masturbating to images of eight to nine-year-old girls once to twice a week for three months" prior to that, and "three to four times a week eight months" before. Harris concluded that P.W. "demonstrates that he is unable to control his sexual arousal," and that it is "actually alarming[] that he has been at ADTC twice and . . . at the STU for over a decade, and he is still engaging in those behaviors that put him at high risk to sexually reoffend."

During his evaluation, Harris also focused on P.W.'s reported schizophrenia, finding that "[h]e doesn't display current frank psychotic symptoms" and "[h]e denies hearing voices . . . [or that] people are trying to hurt him." The

doctor noted that it has been difficult for evaluators to "understand whether he has an autism spectrum disorder or whether he has a schizophreniform disorder."

Based on P.W.'s "self-report of having an arousal to girls and boys," and his actions due to his arousals, "resulting in both arrest and convictions," Harris found that P.W. "does not have the necessary volitional control," of his "sexual arousal pattern." Harris diagnosed P.W. with pedophilic disorder and schizophrenia. He explained that there is "probably a secondary characteristic of the schizophrenia [that] does interfere with some of his ability to use treatment[,]" such as being socially awkward and his poor interpersonal skills. Harris also gave P.W. a score of six on the Static-99R,[2] indicating an above average risk to sexually reoffend.[3]

---

[2] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." R.F., 217 N.J. at 164 n.9. Our Supreme Court "has explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

[3] At the hearing, Harris pointed out a discrepancy in his report where he incorrectly stated that P.W.'s score is a three, when in fact it was a six.

Canataro's report that was prepared after the TPRC examined P.W. on April 18, 2017, recommended that, despite P.W.'s more than ten years at the STU, he remain in Phase Three A, an early treatment phase. Based on a review of P.W.'s sexual offense history, clinical interview, and STU treatment notes, the TPRC concluded that P.W. "continues to demonstrate mediocre treatment gains[,]" and should continue with his current treatment program as "he remains highly likely to sexually offend if not confined to a secure facility such as the STU at this time."

Canataro explained that even though the "STU entered into a court order to continue" a discharge plan to release P.W. in 2009, P.W. "consistently voices concerns of reoffending should he be placed back into the community," and thus, still remains a high risk of sexually reoffending. According to the report, P.W. should continue with his treatment plan, incorporating programming that addresses "his interpersonal style . . . to understand how others perceive him[,]" and his "emotional regulation concepts."

In his statement to the judge, P.W. testified that as a child he was diagnosed with ADHD and hyperactivity, and as of 2016, he was diagnosed with autism. He spoke at length about his request to set up a structure and receive additional resources once he left ADTC, but claimed that the Department of

A-1056-17T5

Human Services would not help him. P.W. further stated that when he realized he was a few months from being released, he "became a little alarmed because [he] was scared . . . personally of being put back into that build up that [he] was in," knowing that parole and SSI could not assist him with his needs. He stated that his therapist told him that "even though [he did not] fit the criteria for commitment," he was going to recommend that he be committed to Ann Klein, "where they can take the responsibility of helping [him] to set up the things in which" he needed on the outside. Following this discussion, P.W. stated that he never heard anything else regarding commitment, and instead he received paperwork to sign, believing he would be discharged.

P.W. claimed that the main reason he was not discharged in 2007, at his first hearing, was because he did not have the proper support set up on the outside for his release. According to P.W., there was an agreement with the Attorney General to discharge him because they believed that he "wasn't a high risk as long as [he] had the structured support" on the outside. He pointed out that over the past eleven years since being committed, he has "tried to explain [that he] need[ed] the support, and they [kept] saying there is no support . . . ." P.W. clarified the type of support he needed, stating "when I am

out there I can still remain in contact with . . . people in the Annex . . . so I can talk with them . . . [and] I can have emotional support, people to talk to when I'm feeling alone, or to get advice for when I need it." He admitted that he knows he has issues, but claimed that he feels as though the "criteria is so stacked up against [him,]" and that he is "being punished more because of [his] mental health problems [than] because of [his] sex offending problem."

P.W. submitted to the court a "realistic" discharge plan that he believed would better suit his needs. He stated that "even if [he] can't be released to the streets," he wanted to be "released to someplace which is less restrictive where they" could help him transition back to the community. He told the court that he "was supposed to get out when [he] was about 37" and was only sentenced to five years, but "now [he has done] over 16 years for [his offense]."

In an oral opinion placed on the record after the presentation of the evidence, Judge O'Brien Kilgallen found by clear and convincing evidence that P.W. "has been convicted of a sexual violent offense," that he "suffers from a mental abnormality or personality disorder, namely pedophilia," that in tandem affect him "cognitively, emotionally and volitionally, which predisposes him to sexual violence" and causes him "to

have serious difficulty controlling sexually violent behavior." The judge noted that the TPRC report found that P.W. should remain in Phase Three of treatment, and that "he is an individual who despite his time exposed to sex offender treatment, his deviant sexual arousal remains strong, and he chooses to continue to behaviorally reinforce this arousal at times."

Judge O'Brien Kilgallen rejected P.W.'s argument regarding the third prong, finding that he offered no opposition to Harris's expert conclusion that P.W. is "highly likely to sexually reoffend and is in need of confinement." The court concluded that P.W. should remain confined at the STU. On the same day, Judge O'Brien Kilgallen entered a memorializing order continuing P.W.'s commitment and this appeal followed.

On appeal,[4] P.W. argues Judge O'Brien Kilgallen erred in concluding that the State met its burden of proof. P.W. contends that the judge erred in finding that the State demonstrated that he is highly likely to reoffend because the judge did not take into consideration "P.W.'s limited sex offending history" or his treatment over the past decade. P.W.

---

[4]  By agreement of the parties and with the permission of the court, the appeal was argued without briefs. We summarize the points raised by appellant based upon the presentation at oral argument.

relies on <u>In re Civil Commitment of V.A.</u>, 357 N.J. Super. 55 (App. Div. 2003), arguing that the judge should have considered whether someone "could be less than highly likely with an appropriate conditional discharge plan" before continuing their commitment in "the most restrictive environment." He contends that he "should be afforded the opportunity to participate in a lesser strict environment through the process of conditional discharge." We reject these arguments and affirm.

"The scope of appellate review of a commitment determination is extremely narrow. The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" <u>R.F.</u>, 217 N.J. at 174 (citations omitted).

"The SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act. The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition of a 'sexually violent offense.'" <u>In re Commitment of W.Z.</u>, 173 N.J. 109, 127 (2002) (citation omitted). It also requires that the person "suffer[] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a

secure facility for control, care and treatment." Ibid. (quoting N.J.S.A. 30:4-27.26).

"[T]he mental condition must affect an individual's ability to control his or her sexually harmful conduct." Ibid. "Inherent in some diagnoses will be sexual compulsivity (i.e., [pedophilia]). But, the diagnosis of each sexually violent predator susceptible to civil commitment need not include a diagnosis of 'sexual compulsion.'" Id. at 129.

The same standard that supports the initial involuntary commitment of a sex offender under the SVPA applies to the annual review hearing. See In re Civil Commitment of E.D., 353 N.J. Super. 450, 452-53 (App. Div. 2002). As noted earlier, in either case, "'the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend.'" W.Z., 173 N.J. at 133-34.

As the fact finder, while "[a] trial judge is 'not required to accept all or any part of [an] expert opinion[,]'" he or she may "place[] decisive weight on [the] expert." R.F., 217 N.J. at 156, 174 (second alteration in original) (citation omitted). Furthermore, "an appellate court should not modify a trial court's determination either to commit or release an individual

unless 'the record reveals a clear mistake.'" Id. at 175 (quoting In re D.C., 146 N.J. 31, 58 (1996)).

We find no clear mistake on this record. The parties did not dispute, and the record amply supports, Judge O'Brien Kilgallen's finding that P.W. had been convicted of a sexually violent offense and suffers from pedophilia, "a mental abnormality or personality disorder," satisfying the first two predicates for continued commitment under the SVPA. See e.g., In re Civil Commitment of D.Y., 218 N.J. 359, 381 (2014); see also R.F. 217 N.J. at 173. Based on unrefuted credible expert testimony, the judge's finding as to the third predicate that he was highly likely to reoffend was supported by evidence of P.W.'s disorders, behavior and lack of treatment progress. The judge's determination, to which we owe the "utmost deference" and may modify only where there is a clear abuse of discretion, In re J.P., 339 N.J. Super. 443, 459 (2001), was in all respects correct. Contrary to P.W.'s assertions, this was not a case where the State was "unable to justify the continued confinement of the committee based on the progress the committee" has made so as to warrant "intermediate levels of restraint." V.A., 357 N.J. Super. at 64 (quoting E.D., 353 N.J. Super. at 456).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                      A-1056-17T5