# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0481-22

B.E.,

    Plaintiff-Respondent,

v.

J.L.,

    Defendant-Appellant.

_____

            Submitted October 30, 2023 – Decided January 16, 2024

            Before Judges Berdote Byrne and Bishop-Thompson.

            On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-0051-23.

            Kalavruzos, Mumola, Hartman, Lento & Duff, LLC, attorneys for appellant (William Les Hartman, on the brief).

            Respondent has not filed a brief.

PER CURIAM

Defendant appeals from the trial court's entry of a final restraining order (FRO) against him, finding harassment and criminal mischief, and claims the trial court erred by: 1) misapplying the Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006) analysis; 2) denying him the right to cross-examine witnesses; and 3) ruling plaintiff's mother was a protected third-party. There is substantial credible evidence that defendant harassed plaintiff, but there is insufficient evidence in the record to support a finding of criminal mischief or that a FRO was necessary to prevent future abuse pursuant to Silver. Moreover, there is insufficient evidence in the record to support adding plaintiff's mother as a protected party. Therefore, we vacate the FRO and remand the matter for a new trial before a different judge. The temporary restraining order (TRO) is reinstated pending a new final restraining order hearing.

I.

We glean the following facts from the record. The parties dated on and off for ten years and have a nine-year-old daughter. Beginning in December 2021, defendant began calling and texting plaintiff and her mother "Lynn,"[1] from "nine or ten" unknown numbers after plaintiff had blocked defendant's

---

[1] We use initials and pseudonyms to preserve the confidentiality of these proceedings. R. 1:38-3(d)(10).

original number. Plaintiff testified that in those messages defendant wrote "he wanted to spit on me. He called me all different types of names, I'm a bitch, I'm a ho – F me, F my family, this and that." In one message, defendant told plaintiff, "I hope you get raped, bitch."

The record is unclear as to whether plaintiff and the parties' daughter live with Lynn or were merely at the same home on the dates the alleged harassment occurred. On Father's Day, June 19, 2022, defendant came to the house in the evening to pick up his daughter. Defendant testified he had been trying to spend time with his daughter all weekend, but plaintiff refused to allow visits for various reasons. When defendant arrived at the house, he called his daughter and told her to come outside, which she agreed to do. When she did not, he went to the front door. Plaintiff refused to let their daughter go with defendant because it was late. A verbal altercation ensued.

After plaintiff shut the door, she testified she heard a "boom" outside. Plaintiff and Lynn went outside. Lynn was hiding a machete behind her back. They saw damage to Lynn's car door. Defendant confirmed he threw a lawn chair in frustration, which he claims inadvertently hit Lynn's car. Plaintiff then picked up the same chair, threw it at defendant's car, and began arguing with defendant. Defendant took off his shirt and told Lynn he was "ready to fight"

3

her until he saw the machete and backed away. Plaintiff testified defendant picked up a metal pole and threw it at Lynn's windshield, breaking it. Lynn called the police.

One month later, plaintiff obtained a TRO, and claimed defendant committed terroristic threats, criminal mischief, and harassment. Both parties were self-represented at the FRO hearing. The trial court conducted direct examination of both parties and Lynn, reviewed screenshots of defendant's text messages to Lynn, and reviewed photos of the damage to Lynn's car.

After hearing plaintiff recount the events, the following colloquy ensued:

> [Court]: Are — are you afraid of defendant?
>
> [Plaintiff]: No.
>
> [Court]: You're not?
>
> [Plaintiff]: U[h] um.
>
> [Court]: So why do you want the restraining order against him?
>
> [Plaintiff]: Because he kept harassing me. I don't want nothing to do with him. I don't want to talk to him, I don't want to see him, I don't [want] nothing.

The trial court probed further:

> [Court]: Did defendant ever destroy anything like he did your mother's car before[? S]mashed things?
>
> [Plaintiff]: No.

A-0481-22

The trial court heard extensive testimony from Lynn and asked her to describe what happened on June 19, 2022. She testified to receiving verbally abusive messages from defendant and provided the court with several pages of screenshots of these messages, which the trial court admitted into evidence and read into the record.

The trial court then returned to questioning plaintiff, asking again why she wanted a restraining order.

> [Court]: You have to tell the court why you think you need a restraining order.
>
> [Plaintiff]: Well, you see, I don't want him harassing me no more. I don't want [him] texting me anymore cause . . . it's just getting annoying. . . . I don't want to deal with him ever again, to be honest. . . . And I don't want him coming to my house starting trouble anymore.

Defendant's direct examination largely corroborated the narrative plaintiff and Lynn provided in their testimony. However, defendant framed the incident within larger difficulties the parties were experiencing regarding parenting time. Nevertheless, defendant admitted he sent plaintiff messages calling her "retarded" because she was a high school drop-out, and it was "the only thing I could say to her to get her upset. Nothing else ever works."

The trial court made credibility determinations, stating:

A-0481-22

I believe that the two of you are very troubled in terms of your relationship over your child. Okay? And you have yet to make decisions together since you've broken up about how it is that one person versus the other is going to pick up, drop off, have time, not have time, who's in charge, and clearly there is a power struggle going on between the two of you . . . .

That being said, . . . a dispute between two parties over how to handle children is not sufficient for there to be a predicate act of . . . harassment. But — but I think there was harassment in this case. . . .

[Plaintiff] recollected the events that night accurately and with detail. She did not embellish. She looked me in the eye when she was speaking. Her testimony was reasonable. She didn't try to hide the fact that her mother pulled out the machete, you know. She kept her back straight, didn't make stories up or try to make up excuses or joke about the other party. She had great candor[,] and she did not evade my questions. She was not reluctant to answer my questions. She . . . was inherently believable in her testimony.

The one thing that I didn't believe her on was the fact that she's not afraid. I think she is afraid[,] or she wouldn't be here because[,] just like her mother said[,] there was a violent incident between the two of you.

The court then entered a FRO that prohibited defendant from contacting plaintiff and named Lynn as a protected third party.

II.

Our review of a FRO is generally limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In matters involving domestic violence, the Supreme

6

Court has held the findings of a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc., v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)).

Our review of questions of law "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)); see also H.E.S. v. J.C.S., 175 N.J. 309, 329-31 (2003) (remanding to the trial court because it failed to "consider the totality of the circumstances surrounding the complaint"); D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (reversing the trial court's entry of a FRO due to lack of findings, no prior history of domestic abuse existing between the parties, and plaintiff's lack of fear). We review conclusions of law de novo. C.C., 463 N.J. Super. at 428.

When determining whether to issue a FRO pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, a trial court must make two distinct determinations. Silver, 387 N.J. Super. at 125-27. First, the court "must determine whether the plaintiff has proven, by a preponderance of

the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

If a court finds a predicate act occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R., 467 N.J. Super. at 322.

> Although this second determination—whether a domestic violence restraining order should be issued—is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse.
>
> [Silver, 387 N.J. Super. at 127.]

N.J.S.A. 2C:25-29(a) provides "[t]he court shall consider but not be limited to" six factors, including the previous history of domestic violence between the parties, N.J.S.A. 2C:25-29(a)(1). "[W]hether the victim fears the defendant" is an additional factor the trial court may consider. G.M. v. C.V., 453 N.J. Super. 1, 13 (App. Div. 2018) (quoting Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995)). The court must determine, pursuant to the totality of the circumstances, whether the FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127; C.C., 463 N.J. Super. at 436; see also N.J.S.A. 2C:25-29(b) ("[T]he court shall

grant any relief necessary to prevent further abuse."). The inquiry is necessarily fact specific. Silver, 387 N.J. Super. at 127-28 (remanding for further fact finding).

1. Harassment.

With respect to the predicate act of harassment, N.J.S.A. 2C:33-4 requires defendant act "with [the] purpose to harass another." Such a finding "may be inferred from the evidence presented" and "[c]ommon sense and experience may inform that determination." State v. Hoffman, 149 N.J. 564, 577 (1997) (first citing State v. McDougald, 120 N.J. 523, 566-67 (1990); then citing State v. Avena, 281 N.J. Super. 327, 340 (App. Div. 1995); and then citing State v. Richards, 155 N.J. Super. 106, 118 (App. Div.), certif. denied, 77 N.J. 478 (1978)). It may also be inferred from the parties' history. J.D. v. M.D.F., 207 N.J. 458, 487 (2011).

Defendant argues he directed his comments primarily towards Lynn and the few insults he texted to plaintiff were mere domestic contretemps that do not amount to harassment. We disagree. Defendant's arguments are belied by the record. Defendant's own admissions demonstrate he sent text messages to plaintiff in an effort to upset her. Exclusive of the numerous text messages sent to Lynn, there is ample, credible evidence in the record to support the trial

9

court's finding defendant harassed plaintiff. The court correctly noted defendant admitted to sending text messages with the intent to upset plaintiff. Despite plaintiff's pleas to stop, and her blocking his number, defendant continued to send her insulting messages, creating "nine or ten" other phone numbers to ensure his messages would reach her. The record supports the trial court's finding that defendant committed the predicate act of harassment.

2. Criminal Mischief.

Criminal mischief, as defined by N.J.S.A. 2C:17-3(a), is another predicate act of domestic violence. N.J.S.A. 2C:25-19(a)(10). An individual is guilty of criminal mischief if he "[p]urposely or knowingly damages [the] tangible property of another." N.J.S.A. 2C:17-3(a)(1).

Defendant argues the trial court erred in finding the predicate act of criminal mischief because the damage was done to Lynn's property and not that of plaintiff. We agree. Although plaintiff testified she was a co-signer on Lynn's lease, she did not produce any evidence to support that claim. She also testified Lynn paid for the repairs to the vehicle. We conclude there is insufficient evidence in the record to support the trial court's finding that defendant purposely or knowingly damaged Lynn's car, and even if he did so purposefully,

whether Lynn's car falls within the definition of "property of another" for purposes of the PDVA.

In the context of the PDVA, the offense is necessarily circumscribed to the property of the victim because a "domestic violence complaint is civil in nature." M.S. v. Millburn Police Dep't, 197 N.J. 236, 248 (2008) (citing Cesare, 154 N.J. at 400). As a civil action, the PDVA's remedies, including a FRO, are limited to the parties to the proceeding; the act only protects victims of domestic violence against domestic abusers. See N.J.S.A. 2C:25-18; N.J.S.A. 2C:25-19(a) (defining "[d]omestic violence" as the occurrence of one or more enumerated criminal offences "inflicted upon a person protected under this act"); M.A. v. E.A., 388 N.J. Super. 612, 619 (App. Div. 2006) (limiting the predicate act of harassment to acts against the plaintiff in the context of the PDVA). If the party does not qualify as a "victim of domestic violence" under the PDVA, he or she cannot seek relief under the act. J.D., 207 N.J. at 473; see M.A., 388 N.J. Super. at 617-18. If the act complained of affects a third party and not the qualifying alleged victim, it cannot serve as a basis for relief under the PDVA. See M.A., 388 N.J. Super. at 619 (finding that harassment, for purposes of the PDVA, "logically refers to the plaintiff, and not a third party"); N.J.S.A. 2C:25-19(a).

In its brief evaluation of whether defendant committed the predicate act of criminal mischief, the court stated, "you admitted to throwing the chair and damaging her mother's car. So that's criminal mischief." Defendant never admitted to purposely or knowingly damaging Lynn's car. Specifically, defendant said, "[a]nd that's when I picked up the chair[,] and I threw the chair out of frustration. And it ended [up] hitting their car." Defendant was also never asked, nor did he address, swinging the pole that allegedly broke the windshield, and the court did not make a finding of fact that it had occurred. Because Lynn was the only person with a possessory interest in the car, and there was no evidence that Lynn was within the definition of a victim of domestic violence, defendant's actions do not fall within the purview of the PDVA.

3.    The Silver analysis.

If a predicate act of domestic violence is found, the trial court must then assess the second prong: "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 126-27). The factors are as follows:

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment, and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time, the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

Emphasizing the need to evaluate these factors, the Silver court explained, "the Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Silver, 387 N.J. Super. at 126-27 (citing Kamen v. Egan, 322 N.J. Super. 222, 227 (App. Div. 1999)). The defendant's conduct must be "imbued by a desire to abuse or control the victim." R.G., 449 N.J. Super. at 228 (citing Silver, 387 N.J. Super. at 126-27).

The trial court failed to make sufficient findings with respect to whether a FRO was necessary to prevent future abuse. The trial court spent a considerable amount of time evaluating defendant's acts and texts messages to

13

Lynn, reading the messages sent to Lynn into the record and admitting them in evidence, although Lynn was not proven to be a protected victim pursuant to the PDVA. Lynn threatened defendant with taking him to court to obtain a restraining order and the trial court entered a restraining order based largely on Lynn's testimony that she was afraid. It also found plaintiff credible, except for her testimony that she is not afraid of defendant. That inconsistency required more detailed findings. Because the trial court failed to make sufficient findings with respect to whether a FRO is necessary to prevent imminent, future harassment, we remand for a new hearing on this issue.

    4.    <u>Cross-examination</u>.

One of the "essential procedural safeguards" for a defendant is the right to cross-examine witnesses. <u>Peterson v. Peterson</u>, 374 N.J. Super. 116, 124 (App. Div. 2005). Denying a defendant the opportunity to cross-examine witnesses violates due process. <u>J.D.</u>, 207 N.J. at 481 (citing <u>Peterson</u>, 374 N.J. Super. at 124-26). However, "[w]e do not suggest that our trial courts are without means to control testimony or to require that parties present testimony and evidence relevant to the issues in dispute." <u>Id.</u> at 482.

Before hearing testimony, the trial court explained to defendant how the court handles cross-examination when a restraining order is in place, stating:

[Court]: And, sir, once each one of the witnesses, including the plaintiff, speak[,] you'll have a right to cross-examine her. But you're not going to direct your questions to her because there is a restraining order. You're [not] supposed to communicate with her. So you'll let me know what it is. I will decide whether or not it's admissible and relevant[,] and then I'll ask her the question. Okay?

[Defendant]: Okay.

The court likewise applied the same rule to plaintiff. At the end of plaintiff's testimony, the trial court asked defendant if he had any questions for her, to which defendant responded, "No, ma'am." Defendant argues the trial court's handling of cross-examination unconstitutionally chilled his right to cross-examine witnesses. We are not persuaded. The trial court took steps to ensure defendant was aware of his right to cross-examine and directed defendant when it was the right opportunity to ask his questions. Although the trial court interrupted his cross-examination of Lynn to continue questioning plaintiff about her potential fear of defendant, the trial court allowed defendant to then resume his cross-examination of Lynn. We discern no error.

5. Protected Third Parties.

The trial court added Lynn to the FRO as an additional protected party without comment. We are constrained to remand this matter for a determination as to whether Lynn may be afforded protection under the FRO. Lynn did not

apply for the FRO, nor were there any findings that would support the issuance of an order of protection in her favor. There was ample testimony Lynn had threatened defendant with seeking a restraining order and she testified she wanted it. The court issued a FRO to protect "both women" after finding a violent act occurred in which Lynn wielded a machete. The testimony is unclear as to whether plaintiff resided in Lynn's house, Lynn resided with plaintiff, or they all happened to be in the same place on Father's Day.

In sum, we affirm the trial court's finding of harassment but remand for a new FRO hearing with respect to the second prong of Silver. We conclude the trial court failed to make sufficient findings with respect to the predicate act of criminal mischief and the second prong of Silver. The final restraining order is vacated. The TRO is reinstated and shall remain in place until a new order is entered following the trial on remand. Because the trial court made credibility determinations, we remand for a new trial before a different judge. See Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (first citing J.L. v. J.F., 317 N.J. Super. 418, 438 (App. Div. 1999); and then citing P.T. v. M.S., 325 N.J. Super. 193, 220-21 (App. Div. 1999)). We take no position regarding whether a FRO should issue.

Affirmed in part, reversed in part, and remanded for a new FRO hearing.

We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17